### UNITED STATES v. ENO.

(Circuit Court, S. D. New York. May 16, 1893.)

1. NATIONAL BANKS—OFFICERS—EMBEZZLEMENT—INDICTMENT.
An indictment against the president of a national bank for misapplication of its funds alleged that he "unlawfully and willfully, and with intent to injure and defraud the said association for the use, benefit, and advantage of himself, did misapply certain of the money and funds of said association, which he * * * then and there, with the intent aforesaid, paid and caused to be paid" to certain persons named. *Held*, that the indictment was bad for failure to allege the facts that made such payment unlawful or criminal.

2. SAME.
It is not essential that such indictment should allege that the acts charged were done without the knowledge and assent of the directors of the association, for such knowledge and assent would not relieve the president from liability for an unlawful or criminal misappropriation of the bank's funds.

At Law. On motion to quash an indictment against John C. Eno for misappropriation of the funds of a national bank of which he was president. Motion granted.

John O. Mott, Asst. U. S. Atty.
Geo. Bliss and Frank Hiscock, for defendant.

BENEDICT, District Judge. This case comes before the court for the first time upon a motion to quash the indictment. The indictment, found on the 17th of June, 1884, contains several counts which differ from each other only in the amount of money charged to have been misapplied, and in the name of the payee of the money. What is there said in regard to the first count is therefore applicable to all the counts.

The first count, after alleging that the defendant was president of the Second National Bank of the City of New York, an association carrying on a banking business in the city of New York under the act of congress approved June 3, 1864, charges as follows:

"The defendant unlawfully and willfully, and with intent to injure and defraud the said association for the use, benefit, and advantage of himself, the said John C. Eno, did misapply certain of the money and funds of said association, to wit, the sum of $100,000, which said sum of money he, the said John C. Eno, then and there, with the intent aforesaid, paid and caused to be paid from the moneys and funds of said association to Arthur Dyett and Abraham R. L. Norton, who then and there carried on business under the firm name and style of A. Dyett & Co."

To this charge it is objected that it is insufficient in law—First, because the facts stated do not show that the payment by the de-

fendant of $100,000 to A. Dyett & Co. was a criminal misapplication of the funds of the bank by the defendant; second, because it is not charged that the money paid A. Dyett & Co. was converted by the defendant to his own use; third, because the indictment fails to allege that the misapplication charged was without the knowledge and consent of the directors of the bank; fourth, because it does not charge that the misapplication was made by Eno as president of the bank.

The law controlling on this occasion has been settled by the supreme court of the United States. The only duty devolving upon this court in this case is to apply that law to the indictment found against the defendant. By the law declared by the supreme court in Britton's Case, 107 U. S. 669, 2 Sup. Ct. Rep. 512, an indictment for a misapplication of the funds of a national bank must specify the particulars of the appropriation, so as to show the application charged to be a criminal misapplication, as distinguished from applications that are unlawful but not criminal. "There must be averments to show how the application was made, and that it was an unlawful one." And in Northway's Case, 120 U. S. 332, 7 Sup. Ct. Rep. 580, it is said by the supreme court:

"It is of the essence of the criminality of the misapplication that there should be a conversion of the funds to the use of the defendant, or of some person other than the association."

In my opinion, the indictment in hand does not comply with this law. The statement of the indictment is simply that the defendant, for the use, benefit, and advantage of himself, misapplied $100,-000 of the moneys of the association of which he was president, by paying $100,000 of the association's money to Dyett & Co. This statement shows how the application was made, viz. by paying $100,000 to Dyett & Co. at the time and place stated, but it does not show that such payment was an unlawful one. It will be observed that the indictment contains no averment that the $100,000 was by the defendant paid, or by Dyett & Co. received, to the use of the defendant. It is not averred that the payment by the defendant to Dyett & Co. was in truth and in fact a payment to himself. There is no statement that Dyett & Co. were not entitled to be paid by the bank the $100,000 that was paid them. They may have had $100,000 on deposit in the bank, or their note for $100,000 may have been discounted by the bank. For aught that appears in this indictment, the payment to Dyett & Co. was entirely lawful, and, if so, the payment was not a conversion of the money by the defendant. Such a payment of $100,000 to Dyett & Co. might be useful or beneficial or advantageous to the defendant without being a conversion of the money by him. It is of no consequence that the payment is stated to have been unlawful. Calling a thing unlawful does not make it unlawful. Facts showing that the payment of the $100,000 to Dyett & Co. was not only unlawful, but a criminal application of the bank's money, should have been stated. Nor is the indictment helped by the averment that the money was paid by the defendant to Dyett & Co. with

intent to injure and defraud the association. The rule on this subject has been stated as follows:

"The words 'with intent to injure and defraud' are words essential to the offense as charged, but do not enlarge the significance of the language, which avers the facts necessary to be proved in order to constitute the offense." Mass. Crim. Law, 624.

It may be proper to add, in regard to the point made that the indictment is defective because it fails to aver that the acts charged were done without the knowledge or assent of the directors of the association, that, in my opinion, such an averment is not essential in an indictment for the misapplication of the funds of a national bank. The statute does not make absence of authority from the directors an ingredient in the crime of misapplication. I conceive that a conversion of the funds of a national bank by its president may be a criminal misapplication of the funds of the bank, although done with the knowledge and assent of the directors of the bank. The president of a national bank is not the association, nor are the president and directors the association. They are only officers of the association. The moneys of the stockholders and of the depositors in the association are not the moneys of these officers, but of the association; and it has not yet been held that a national bank may be pillaged of such moneys by its president, with impunity, provided the act be done in pursuance of a conspiracy between the president and the directors, or a majority of them.

The motion to quash must be granted.