**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Howard B. QUINN, Defendant-Appellant.
No. 15142.**

United States Court of Appeals
Seventh Circuit.

Aug. 4, 1966.

Rehearing Denied Sept. 29, 1966.

258

Barnabas F. Sears, Samuel E. Hirsch, Gerald M. Sheridan, Jr., Louis E. Siciliano, Chicago, Ill., for defendant-appellant.

Edward V. Hanrahan, U. S. Atty., John Peter Lulinski, John Powers Crowley, Richard A. Makarski, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee, Lawrence Jay Weiner, Asst. U. S. Atty., of counsel.

Before DUFFY, SCHNACKENBERG, and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

Defendant was charged in a four-count indictment with violations of Title 18 U.S.C.A. Secs. 657 and 1006. Counts I and III alleged violations of Sec. 657, and Counts II and IV, violations of Sec. 1006. The allegations of Counts I and II relate to defendant's act in obtaining, on April 3, 1963, a rent prepayment from Beverly Savings and Loan Association (sometimes hereinafter referred to as Beverly) in the amount of $553,166.66. The matters referred

to in Counts III and IV relate to a separate but distinct act of defendant in the presentation, on July 8, 1963, of a check drawn on Industry Capital Corporation in the amount of $95,000, in exchange for an accommodation check drawn by Beverly in the same amount. After a trial by a jury which found defendant guilty on all four counts, the Court, on January 18, 1965, committed defendant to the custody of the Attorney General for imprisonment for a period of three years on each count, the sentences on Counts II, III and IV to run concurrently with each other and with that imposed on Count I. From this judgment the appeal comes to this Court.

The numerous grounds relied upon for reversal may be generally stated as follows: (1) that the counts of the indictment and each of them did not allege facts sufficient to state an offense under the statutes involved; (2) that Sec. 1006 was not intended by Congress to pyramid crimes by making "participation" in the proceeds of a "misapplication" (direct conversion) by the same defendant to his own use an offense; (3) that Count IV of the indictment is insufficient to allege an offense under Sec. 1006, when no "transaction of" the association is alleged; (4) that the Court abused its discretion under Rule 14 by its refusal to grant a motion to sever Counts I and II from Counts III and IV for separate trials; (5) that the Court committed prejudicial error by failing to grant defendant's motion to compel the government to elect to proceed on either Count I or II and on either Count III or IV; (6) that the Court erred in failing to grant defendant's motion for a judgment of acquittal as to each count, and (7) that defendant was denied a fair trial because of prejudicial trial errors and improper instructions to the jury.

It is evident that the errors thus assigned in the main involve questions of law. Such being the situation, we discern no reason at this point to make a detailed statement of the evidence relied upon by the government in support of the judgment. Even so, it may be pertinent —at least informative—to identify the companies and persons associated with Beverly who were witnesses.

Beverly was a state chartered savings and loan association which began doing business about 1955, at 2138 W. 95th Street, Chicago. Defendant first became associated with Beverly in August 1958, when he became its president. His association with Beverly continued until October 1, 1963. He was engaged in numerous business concerns, including Quinn Management Company, Quinn Home Builders, Quinn Insurance, Beverly Terrace Subdivision, Farrell Manufacturing Company, Industry Capital Corporation and Lakewood Farms Development. Quinn Management Company was a sole proprietorship owned by defendant. Quinn Home Builders was a corporation which dealt in residential and industrial construction. Defendant and his wife were the shareholders of that corporation. Industry Capital Corporation was a small business investment corporation in which defendant owned all the shares in 1963.

Joseph Geisen, an accountant, became associated with Beverly in 1960. He was president and chief executive officer from April 1961 to August 15, 1963, when he resigned. He was also a director. Allan M. Douglass was a Beverly director for four years, up to and including 1963. Gerald S. Ahern, an accountant, was treasurer for Beverly from March until June 17, 1963, when he voluntarily resigned. Marian Lana was employed as secretary for Beverly, and attended and prepared typewritten minutes of meetings of its board of directors. Philip Roberson was employed by defendant to act as office manager and accountant for Beverly and other Quinn interests.

## THE INDICTMENT

Each count of the indictment contains the identical preliminary allegations (hereinafter referred to as such) that the defendant "being a Director of the Beverly Savings and Loan Association, Chicago, Illinois, a savings and loan association, the accounts of which were then insured by the Federal Savings and Loan

Insurance Corporation, [is charged] with intent to defraud the said Beverly Savings and Loan Association * * *," followed by a description of the alleged offense. Both Counts I and II are predicated upon the same act, that is, the alleged prepayment of rent on April 3, 1963. Count I charges a violation of Sec. 657, and Count II, a violation of Sec. 1006. Counts III and IV are also based on the same act, that is, that on July 8, 1963, defendant caused to be unlawfully disbursed monies of Beverly in the amount of $95,000. Count III charges a violation of Sec. 657, and Count IV, a violation of Sec. 1006.[1]

In addition to the preliminary allegations, Count I insofar as pertinent alleges:

" * * * defendant * * * did unlawfully and wilfully misapply and cause to be misapplied monies * * * belonging to * * * said Beverly * * * in the amount of $553,166.66 by fraudulently causing to be disbursed by Beverly * * * and converting to his own personal use * * * a Beverly * * * check No. 2174, dated April 3, 1963, in the amount of $553,166.66 made payable to * * * Quinn Management Company, which sum of $553,166.66 purportedly represented a four year prepayment of rent by Beverly * * * to Quinn Management Company, and which disbursement defendant * * * well knew was made without knowledge, consent and approval of the Board of Directors of said Beverly * * * in violation of Section 657 * * *."

Defendant's principal attack on this count is that the allegation of misapplication in itself is not sufficient. This contention overlooks the further allegation that the funds misapplied were converted to the defendant's own personal use which, in our view, removes the case from the ambit of those relied upon by defendant. The principal case relied upon,

which defendant characterizes as a "landmark decision," is United States v. Britton, 107 U.S. 655, 2 S.Ct. 512, 27 L.Ed. 520, decided under a former statute having to do with the misapplication by officers of national banks. The Court in that case was considering an indictment which contained 119 counts. Some were held sufficient, others insufficient, to charge an offense. The statement emphasized here by defendant was made with reference to Count 37 and those similar to it, concerning which the Court stated (page 669, 2 S.Ct. page 524):

"The words 'willfully misapplied' are, so far as we know, new in statutes creating offenses, and they are not used in describing any offense at common law. They have no settled technical meaning like the word 'embezzle,' as used in the statutes, or the words 'steal, take, and carry away,' as used at common law. They do not, therefore, of themselves fully and clearly set forth every element of the offense charged. It would not be sufficient simply to aver that the defendant 'willfully misapplied' the funds of the association. This is well settled by the authorities we have already cited. There must be averments to show how the application was made and that it was an unlawful one."

We think the Court held no more than that the mere averment, "willfully misapplied," was not sufficient but that there must be further averments that "the application was made and that it was an unlawful one." In the instant case, not only was misapplication of funds alleged but, further, that they were "converted" to defendant's own personal use. That this allegation remedied the deficiency of which the Court in Britton spoke is shown by its statement with reference to Count 77 and a group of similar counts (page 666, 2 S.Ct. page 522):

"We think the willful misapplication made an offense by this statute means

1. For a description of the pertinent provisions of Secs. 657 and 1006, reference is made to United States v. Hickey, 7

Cir., 360 F.2d 127, a recent decision of this Court. (See footnotes 1 and 2, page 130.)

a misapplication for the use, benefit, or gain of the party charged, or of some company or person other than the association. Therefore, to constitute the offense of willful misapplication, there must be a conversion to his own use or the use of some one else of the moneys and funds of the association by the party charged. This essential element of the offense is not averred in the counts under consideration * * *."

In a situation somewhat analogous, United States v. Meyer, 5 Cir., 266 F.2d 747, 754, the Court made a pertinent comment on the holding in Britton. In Mulloney et al. v. United States, 1 Cir., 79 F.2d 566, the Court sustained the sufficiency of a charge that a bank official willfully misapplied funds of the bank. In so doing it cited a number of cases, including Britton, and concluded (page 581) that it was a sufficient description of the offense "to allege that the respondent was an officer of a national banking association, and that he willfully misapplied funds of the association by converting them to his own or the use of some other person, coupled with a statement as to how the conversion was done and with the further allegation that it was done with intent to injure or defraud the association."

As to the means and method of the misapplication, defendant was informed that he fraudulently caused to be disbursed by Beverly a check issued on a certain day and in a certain amount, payable to a third party, and that he converted the proceeds thereof to his own use with intent to defraud. In this connection we think it should be noted that the allegation, "without knowledge, consent and approval of the Board of Directors of said Beverly," is not an element of the offense set forth in Sec. 657. Mulloney v. United States, 79 F.2d 566, 581; Flickinger v. United States, 6 Cir., 150 F. 1, 4; United States v. Eno, C.C., 56 F. 218, 220. The allegation is surplusage and may be rejected. Ford v. United States, 273 U.S. 593, 602, 47 S.Ct. 531, 71 L.Ed. 793. Testimony on the issue, however, was relevant inasmuch as it bore upon the issue of defendant's alleged intent to defraud.

We hold that the facts alleged in Count I are sufficient to state an offense under Sec. 657.

■ We now consider Count III inasmuch as it, like Count I, is based upon Sec. 657. In addition to the preliminary allegations, it alleges:

"* * * defendant * * * did unlawfully and willfully misapply and cause to be misapplied monies, funds and credits belonging to and entrusted to the care and custody of said Beverly Savings and Loan Association in the amount of $95,000.00 by fraudulently causing to be disbursed by Beverly Savings and Loan Association and converting same to his own personal use, benefit and advantage a Beverly Savings and Loan Association Check No. A–9272, dated July 8, 1963, in the amount of $95,000.00, payable to the order of Lakewood Farms in exchange for a certain check, in the amount of $95,000.00, dated July 8, 1963, made payable to Beverly Savings and Loan Association, and drawn on the account of Industry Capital Corporation at the Lake Shore National Bank, Chicago, Illinois, well knowing that said account of Industry Capital Corporation did not then and there contain sufficient funds to cover payment of said check; in violation of Section 657, Title 18, United States Code."

In short, defendant utilized a check of Industry Capital which he knew to be worthless, and in exchange therefor caused Beverly to issue its check to Lakewood Farms, the proceeds of which he converted to his own use. Defendant argues that this count charges nothing more than the passing of a bad check, which does not constitute a misapplication within the meaning of Sec. 657. Cited in support of this argument is United States v. Wiggenhorn, 9 Cir., 312 F.2d 289, 292. True, in that case the Court affirmed an order by the District Court dismissing the indictment as being insufficient. This case, however, like those discussed

in relation to Count I, is distinguishable by the fact that the indictment contained no allegation "that any of the moneys, funds or credits of the bank were converted to the use, benefit or gain of the defendant or some other company or person other than the bank of which defendant was an officer." Thus, an essential allegation contained in Count III was missing in Wiggenhorn.

In any event, we think the allegations of Count III are adequate to charge a violation of Sec. 657.

■ We now consider Counts II and IV inasmuch as each charges a violation of Sec. 1006. Count II is based upon the same act or transaction described in Count I, and Count IV on the same act or transaction described in Count III. Count II alleges:

"* * * defendant * * * did, with intent to defraud the said Beverly Savings and Loan Association, unlawfully and willfully participate, share in and receive money, profits and benefits, to-wit: the sum of $553,166.66, which sum represented funds obtained by said defendant Howard B. Quinn through an act and transaction of Beverly Savings and Loan Association, to-wit: the disbursement by Beverly Savings and Loan Association of its Check No. 2174, in the amount of $553,166.66, to Quinn Management Company on or about April 3, 1963 purportedly representing a four year prepayment of rent by said Beverly Savings and Loan Association; in violation of Section 1006, Title 18, United States Code."

Stripped of the conclusions of the pleader, the count alleges nothing more than that defendant received money "through an act and transaction of Beverly Savings and Loan Association," by disbursement of a check of the association "purportedly" representing a prepayment of rent. There is no allegation as to the manner or means employed in receiving money, profits and benefits, or that the check described was issued without proper authority. More important, there is no allegation that what is described as "purportedly" a prepayment of rent was not in fact an actual prepayment.

The government's main response in defense of Counts II and IV is that they are sufficient because they contain the essential elements of Sec. 1006. As we shall subsequently show, even that is not true as to Count IV. Moreover, a charge which merely contains the elements set forth in the statute is not always sufficient. A good example is found in our discussion as to Counts I and III, based on Sec. 657, in which the misapplication of funds is the essential element. As we have shown, the allegation of a mere misapplication is not sufficient. We have recognized the sufficiency of these counts because they allege not only a misapplication in the statutory language but, further, that the funds misapplied were converted to the use of defendant.

Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240, is a recent case wherein the Court held insufficient an indictment drawn in statutory language. The Court (page 765, 82 S.Ct. page 1047) cites and quotes from numerous cases, including United States v. Cruikshank, 92 U.S. 542, 558, 23 L.Ed. 588, as follows:

"'It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, "includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; that it must state the species,—it must descend to particulars."'"

The Court stated (page 766, 82 S.Ct. page 1048) that such principles "retain their full vitality under modern concepts of pleading, and specifically under Rule 7(c) of the Federal Rules of Criminal Procedure, is illustrated by many recent federal decisions." We think the reasoning in that case is applicable here.

■ The charge in Count IV is on its face patently defective. It alleges:

"* * * defendant * * * did * * * unlawfully and wilfully receive

money, profits and benefits, to-wit: the sum of $95,000.00, which said sum of $95,000.00 defendant Howard B. Quinn obtained by means of and through monies and funds said defendant fraudulently caused to be disbursed by Beverly Savings and Loan Association on or about July 8, 1963 in exchange for a certain check drawn on the account of Industry Capital Corporation at the Lake Shore National Bank, Chicago, Illinois, dated July 8, 1963, in the amount of $95,000.00 * * *."

This count fails to allege an essential element of the statutory offense; it omits the requirement (contained in Count II) that defendant received money "through an act and transaction of Beverly."[2] Again stripped of the conclusions of the pleader, nothing more is charged than that defendant received from Beverly $95,000, in exchange for a check in the same amount drawn on the account of Industry Capital Corporation. There is no allegation that the check which defendant gave Beverly was worthless or, if so, that defendant had knowledge of the same, and no allegation that it was not paid by the bank on which it was drawn. For aught that is alleged defendant might have received money from Beverly in exchange for a check which would have been paid by the bank on which it was drawn.

We hold that Counts II and IV are fatally defective for failure to state the offenses which they purport to charge.

■ The conclusion thus reached that Counts II and IV are defective requires a reversal of that portion of the judgment based on such counts and, under the circumstances, we think requires a reversal of the judgment in its entirety. Lest there be doubt on this score, however, we shall consider the contention that the Court erred in its refusal to grant defendant's motion to sever, for separate trials, Counts I and II from Counts III and IV.

## MOTION FOR SEVERANCE

Prior to trial defendant made an appropriate motion under Rule 14 of the Federal Rules of Criminal Procedure. The grounds alleged were that Counts I and II were improperly joined with III and IV, in violation of Rule 8(a) of the Federal Rules of Criminal Procedure; that defendant would be prejudiced by the admission of evidence under Counts I and II which would not be admissible under Counts III and IV, and vice versa, and that under the circumstances a trial on all four counts would make it impossible for defendant to receive a fair trial.

■ Rule 8(a), so far as pertinent, provides:

"Two or more offenses may be charged in the same indictment * * in a separate count for each offense if the offenses charged * * * are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

Thus, joinder of two or more crimes in the same indictment is permissible only if one or more of the following three circumstances appear from the indictment: (1) the crimes must be the same or of similar character, (2) the crimes must be based on the same act or transaction, or (3) the crimes must be based on two or more transactions connected together or constituting parts of a common scheme or design.

2. In the argument before the District Court on the motion for severance, government's counsel took the positive position that the $95,000 transaction was a violation of Sec. 1006 only because it was an act and transaction of Beverly. Counsel stated, "If he just took money out of the cash drawer, he would be guilty of misapplication, but not necessarily of 1006 because that is his own act, his transaction, just taking the money out of the cash drawer. Here the transaction was the act of the Association in giving the check to Mr. Quinn. This is where he participated unlawfully in the act or transaction of the Association. This is the difference between the two sections in my mind."

264

■ In the trial court the government urged as a basis for denial of the motion, (1) "the offenses are clearly of a 'similar character' and under Rule 8(a) could be included in the same indictment," and (2) "that much of the same evidence will be used in connection with proving both the first two counts and the latter two counts to show a 'common scheme or plan.'" In this Court the government places no reliance upon the second ground, and we think for good reason. Each count of the indictment failed to allege "a common scheme or plan" connecting the different transactions, and no claim is made here that there was proof thereof. Neither does the government make any claim but that Counts I and II are based upon a transaction separate and distinct from that of Counts III and IV.

Thus, the government attempts to justify the Court's denial of severance solely on the basis that the transactions set forth in the two sets of counts "are of the same or similar character." In support of this contention it cites Robinson v. United States, 93 U.S.App.D.C. 29, 210 F.2d 29, United States v. Lotsch, 2 Cir., 102 F.2d 35, and United States v. Berry, D.C., 96 F. 842. These cases in the main are distinguishable and furnish scant, if any, support for the government's contention.

In Robinson, several defendants and several counts were joined, which the Court approved. In a headnote it is stated (210 F.2d page 30):

"Conspiracy to embezzle and misapply funds, conspiracy to conceal material facts, and conspiracy to make false statements and entries, were closely related offenses which could be charged in single count."

Evidently the offenses alleged were not only similar but embodied a common scheme or design.

In Lotsch, each of three counts charged the defendant with doing the same thing, i. e., procuring loans for which he received unlawful commissions from the borrowers, in violation of Title 12 U.S. C.A. Sec. 595. (We shall subsequently quote from the opinion in this case, written by Judge Learned Hand.)

In Berry, the defendant was charged in separate counts with making false entries in a bank's books. Although each of the violations occurred at different times, the Court held that they were properly joined because they were of the same class of crimes.

On this record it is not open to question but that the offenses alleged in Counts I and II were based on a transaction separate and distinct from that relied on in Counts III and IV, and that the separate transactions were not connected as part of a common scheme. Further, the offenses charged in Counts I and II are not of the same or similar character as those charged in Counts III and IV and, in our judgment, the Court erred in its refusal to allow defendant's motion for severance on the basis of misjoinder under Rule 8 (a).

■ Assuming, however, that there was no misjoinder, we are convinced after a careful study of the record that defendant was prejudiced by the joinder and that the Court abused its discretion in denying severance. In answer to defendant's persuasive argument on this point, the government makes the innocuous reply, "A fair reading of the record, however, reflects that the defendant was not prejudiced by the Court's decision," and states that the jury did not "have any difficulty treating the evidence as to each count separately and distinctly." The first statement is forcefully contradicted by the record, and the second is wishful thinking.

On this point the government cites a single case, a recent decision of this Court, United States v. Gardner, 347 F. 2d 405, 406, wherein we reaffirmed the general rule, "The issue of severance is within the discretion of the trial court and is not subject to review in the absence of an affirmative showing that such discretion was abused." In that case we held that the showing of prejudice had not been made. Obviously the rule there announced is of little aid to the

government here, where we think the matter of prejudice clearly appears.

A case relied upon by defendant and more in point is Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85. There, a single defendant was tried for an armed robbery and an attempted robbery under a single indictment on the theory that the crimes were similar in nature. Although the Court of Appeals found that joinder of the crimes in the indictment was proper under Rule 8(a), it reversed the conviction because defendant was prejudiced by the possibility that the jury used evidence of one crime to convict for the other or cumulated the evidence to find guilt under both charges. In discussing the matter of prejudice the Court stated (page 89).

> "It is a principle of long standing in our law that evidence of one crime is inadmissible to prove *disposition* to commit crime, from which the jury may infer that the defendant committed the crime charged. Since the likelihood that juries will make such an improper inference is high, courts presume prejudice and exclude evidence of other crimes unless that evidence can be admitted for some substantial, legitimate purpose. The same dangers appear to exist when two crimes are joined for trial, and the same principles of prophylaxis are applicable."

This appears to be an appropriate point to reiterate the warning sounded by Judge Hand in United States v. Lotsch, 102 F.2d 35, 36, which reads as though written for this case:

> "There is indeed always a danger when several crimes are tried together, that the jury may use the evidence cumulatively; that is, that, although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all."

In approving joinder, he stated (page 36):

> "Here we can see no prejudice from joining the three charges: the evi-

dence as to each was short and simple; there was no reasonable ground for thinking that the jury could not keep separate what was relevant to each."

The situation thus described is in marked contrast to that here where the introduction of evidence extended over a five-day period, was complex and confusing, and where the most optimistic seer would hesitate to endanger his reputation by claiming that the jury could separate the proof relevant to the different counts.

There has been filed in this Court a fifty-page transcript of the proceedings held on defendant's motion for severance. A reading of the argument and colloquy between the Court and counsel leaves no doubt that the case was highly confusing, both from the legal and evidentiary standpoints. The able trial judge had difficulty grasping the government's position concerning the charges contained in the different counts and the relation which they bore to each other, and government counsel in numerous respects had difficulty in explaining satisfactorily the government's position.

Reference to a few of the matters developed during the trial illustrates the prejudice which defendant must have sustained by reason of the Court's refusal to sever for trial Counts I and II from Counts III and IV. More than one-third of the government's proof (as shown by defendant's appendix) was devoted to the allegation made in Count I of the indictment relative to the prepayment of rent that defendant "well knew was made without knowledge, consent and approval of the Board of Directors" of Beverly. This allegation was contained in no other count. It was not, as previously shown, an element of the statutory offense; it was surplusage. This proof was admitted as being relevant to defendant's alleged fraudulent intent. Granting that it was properly admitted as to the rent prepayment charge, it bore no relevancy to the transaction described in Counts III and IV, yet so far as we are able to determine the jury was at no time informed as to the purpose for which it was admitted or the counts to which

it was relevant. The Court in its charge to the jury made no mention of the authority issue. Even if the jury had been properly instructed as to its purpose and applicability, it is hardly conceivable that it would not have contaminated its resolution of the issues presented by Counts III and IV.

That the defendant was in a financial quagmire was abundantly shown. His situation in this respect was emphasized by the government's introduction of a mass of testimony and many exhibits, including checks written by or under the direction of defendant on banks where he had insufficient funds (NSF). These checks generally fell into two categories, one set issued shortly prior to April 3, 1963 (a date material to Counts I and II), and another set issued shortly prior to July 8, 1963 (a date material to Counts III and IV). It appears to have been recognized by the Court, as subsequently shown, that the first set was not relevant to Counts III and IV, and the latter not relevant to Counts I and II.

As to the first set of checks, the Court in overruling defendant's objection to their admission stated:

"The relevance of this testimony is only as it indicates his financial condition at the time to the extent that that has any relationship to the things with which he is charged in the indictment, that is, the application of funds of Beverly Savings and Loan improperly and willfully and knowingly to his own account. It hasn't anything to do with the fact that these checks were drawn or returned N.S.F."

It thus appears that these checks were admitted generally; certainly the jury was not told either at the time of their admission or later in the Court's charge that they were relevant only to Counts I and II.

When the second set of checks was offered, defendant's counsel objected on the ground that they were immaterial but requested, if admitted, that they "be limited to the count to which they properly pertain rather than generally as exhibits." Then follows the colloquy between the Court and defendant's counsel:

"The Court: You mean checks in July can't relate to transactions in the end of March and the first part of April and vice versa? I cannot tell the jury that they shouldn't be idiots. No, I don't see any problem. They are received in evidence.

"Mr. Callaghan: Certainly these documents are not admissible against the defendant on the charges contained in Counts 1 and 2. If they are admitted generally, they might be accepted by this jury as pertaining to this other offense involved here.

"The Court: How could they? They don't come up until July.

"Mr. Callaghan: We don't know how juries gauge these matters, Judge. You and I as trained lawyers can do this sort of thing, but the jurors can't.

"The Court: I will give them a general instruction that checks dated in July don't relate to Counts 1 and 2 and check dated in April don't relate to Counts 3 and 4."

While this colloquy apparently took place in the presence of the jury, it was only a promise by the Court that it would give a general instruction covering the situation. No such instruction was given, however, in the Court's charge to the jury, or elsewhere so far as we are able to ascertain. Even if such an instruction had been given, we think that with the mass of testimony which the government introduced it would have been next to impossible for the jury to have differentiated between the proof as it pertained to the different counts. The government in the beginning when it opposed the motion for severance should have anticipated the prejudicial situation in which defendant would be placed.

We perceive no reason to decide or discuss other issues which are here argued by defendant. We hold (1) that Counts I and III each properly charged an offense under Sec. 657; (2) that Counts II and IV are both fatally defective for failure to charge an offense under Sec.

1006, and (3) that the Court erred in its denial of defendant's motion for severance under Rule 14, on the ground that Counts I and II were improperly joined with Counts III and IV, in violation of Rule 8(a). In the alternative, we hold that even though there was no misjoinder of counts, defendant was greatly prejudiced by the denial of his motion for severance and that the Court's refusal to allow such severance was an abuse of its discretion.

The judgment appealed from is Reversed and remanded.