587 P.2d 750

**STATE of Arizona, Appellant,**

v.

**James G. JONES, Appellee.**

**No. 1 CA–CR 2396.**

Court of Appeals of Arizona,
Division 1,
Department B.

May 9, 1978.

Rehearing Denied June 19, 1978.

Review Granted July 11, 1978.

Charles F. Hyder, Maricopa County Atty. by Joseph E. Abodeely and Frank T. Galati, Deputy County Attys., Phoenix, for appellant.

Thinnes & Rawles by Tom Rawles, Phoenix, for appellee.

## OPINION

JACOBSON, Judge.

The basic issue raised by the state's appeal from the granting of defendant's motion for new trial is whether the underlying charges against the defendant resulting in a 53 count indictment were properly joined under Rule 13.3(a), Arizona Rules of Criminal Procedure.

The defendant, James G. Jones, was tried and subsequently convicted by a jury of ten counts of bribery, four counts of forgery, one count of grand theft, two counts of petty theft by embezzlement, and one count of grand theft by embezzlement. The trial court granted defendant's motion for new trial on two bases: (1) that the trial court erred as a matter of law in failing to grant defendant's motion for severance of offenses, and (2) the county attorney was guilty of misconduct in failing to reveal Brady[1] material to the defense. The state has appealed the granting of the new trial motion.

The legal posture of the appeal has placed the parties in substantial agreement as to the applicable facts in this case.

During the period of 1970 through November, 1974, the defendant Jones was the executive director of the Arizona Coliseum & Exposition Center and John J. Huizingh was the comptroller. By law, the executive director is the chief administrative officer of the Arizona Coliseum and the Arizona

1. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

State Fair. As a result of an investigation conducted by the Auditor General and the Department of Public Safety, a grand jury returned a 93 count indictment against the defendant Jones, Huizingh, and two other Coliseum employees, Marino Joseph "Benny" Guardalibene and William Palethorpe.

The jointly indicted defendants were successful in severing their trials from each other, Jones and Huizingh being ordered to trial jointly. The charges against Huizingh were subsequently dropped in exchange for his testimony against Jones. Prior to trial, Jones moved under Rule 13.3(a) and 13.4(a), Arizona Rules of Criminal Procedure, for severance of the offenses against him. This motion was denied and Jones proceeded to trial on a 53 felony count indictment. The 53 counts comprised four basic types of charges: 16 counts of bribery, 28 counts of forgery, 8 counts of embezzlement and 1 count of grand theft.

The bribery charges arose out of Jones dealing with seven individuals who from a period between 1971 and 1974 used the Coliseum facilities as concessionaires. One of the prime factors in the financial success of any concession was its location in the exhibit hall or on the midway. As it was put by one concessionaire: "You have to be in the main traffic pattern if you want any money." Also, because of limited space, competition among concessionaires to be allowed to participate in events at the Coliseum throughout the year was keen. The bribery charges against Jones arose out of his allegedly accepting monies from concessionaires to secure favored locations and to be able to participate in the Coliseum events.

The 28 counts of forgery arose out of two separate schemes allegedly hatched by Jones involving phony promotional companies (actually owned by Jones and another individual) whereby the companies received monies actually belonging to the Coliseum. These two schemes (the "S.R.O." deal with the 4–H fair in 1972 and "Shasta" deal with the Jackson Five concert in 1973) generated forged signature cards and checks which were the basis of the forgery counts. These schemes also resulted in two embezzlement counts.

The remaining embezzlement counts covered a variety of distinct and different events between 1972 and 1974. If true, Jones was obviously guilty of taking monies rightfully belonging to the Coliseum.

The grand theft charge arose out of an event where money in a bag belonging to another concessionaire was allegedly stolen by Jones.

As previously indicated, prior to trial, the defendant moved to sever the charges against him. Specifically, the defendant did not object to a joint trial of the 16 counts of bribery, or a joint trial of the forgery and embezzlement counts arising out of the S.R.O. and Shasta schemes, or a joint trial of the remaining six counts of embezzlement. What he did object to was a trial of all of these various charges and counts together. This motion to sever was denied.

The case began trial on August 24, 1976 and after jury selection and the state's first witness testified, the defendant renewed his motion to sever. Again, the motion was denied. After the state rested, the defendant moved for a mistrial on the basis of the failure of the trial court to sever offenses. This motion was again denied. Prior to closing arguments, the defendant again renewed all of his previous motions which were denied.

At the close of the state's case, the trial court directed verdicts in favor of the defendant on 30 counts of the indictment (two counts of bribery, 24 counts of forgery and four counts of embezzlement.) At the close of the defendant's case an additional four counts of the indictment were disposed of by directed verdicts of acquittal (one count of embezzlement and three counts of bribery.)

The matter went to the jury on 18 felony counts and one misdemeanor count. (The trial court had previously ordered that one count of grand theft by embezzlement be submitted to the jury on a petty theft basis only.) The jury returned verdicts of not guilty on one count of bribery; guilty on

ten counts of bribery, four counts of forgery, one count of grand theft, one count of grand theft by embezzlement, and two counts of petty theft by embezzlement.

After the trial was completed, it came to light that during the course of the investigation by the state, a Mr. and Mrs. Gary Glaspie were interviewed by the prosecutor. The defense had previously moved for and was granted a disclosure order. The fact of the Glaspie interview or the substance of that interview was not disclosed pursuant to that order.

Based upon the failure to disclose, together with the failure to grant the motion for severance, the trial court granted a new trial.

The state's basic attack on the granting of a new trial because of failure to sever offenses, is that the trial court abused its discretion in granting that motion. In this regard, the state argues that the trial court's discretion exercised in previously denying the motions to sever was properly exercised. The defendant, on the other hand, argues that the trial court, as a matter of law, erred in not granting its previous motions to sever and therefore the granting of a new trial on this ground was correct, or alternatively, that the trial court in the exercise of its discretion determined that the failure to sever was prejudicial to the defendant and the motion for new trial was properly granted on this ground. Both parties' contentions are initially controlled by Rule 13.3, Arizona Rules of Criminal Procedure, which provides in part:

"Rule 13.3 Joinder
"a. Offenses. Provided that each is stated in a separate count, 2 or more offenses may be joined in an indictment, information, or complaint, if they:
 "(1) Are of the same or similar character; or
 "(2) Are based on the same conduct or are otherwise connected together in their commission; or

 "(3) Are alleged to have been a part of a common scheme or plan."

It is important at this juncture to distinguish between the "joinder" of offenses under Rule 13.3(a) and the "severance" of offenses under Rule 13.4(a).[2]

Rule 13.3(a) is patterned after Rule 8(a), Federal Rules of Criminal Procedure, and as such is ". . . an attempt to set the limits of tolerance, and any joinder which does not fall within it is per se impermissible." *King v. United States*, 355 F.2d 700, 703 (1st. Cir. 1966). As was stated in *State v. Stago*, 82 Ariz. 285, 287, 312 P.2d 160, 161 (1957), in interpreting Criminal Rule 128(A), the predecessor of Rule 13.3(a):

"By specifying when offenses may be consolidated, there is impliedly negatived any authority to consolidate under other or different circumstances."

Consequently, any misjoinder under Rule 13.3(a) which fails to comply with the minimum standards of joinder, is treated as conclusively prejudicial and upon a determination that misjoinder has occurred, the trial court has no discretion but to order severance. *State v. Stago, supra; Ingram v. United States*, 272 F.2d 567 (4th Cir. 1959); 8 Moore's Federal Practice, § 8.04[2], at 8–14 (2d ed., 1965).

This is to be contrasted with severance under Rule 13.4(a), which presupposes a proper joinder under Rule 13.3(a). *See, e. g., State v. Williams*, 108 Ariz. 382, 499 P.2d 97 (1972); 8 Moore's Federal Practice § 14.02[1], at 14–3 (2d ed., 1965). In order to obtain severance under this rule, the defendant must be able to show prejudice by the joinder and the determination of whether or not to grant a severance is within the sound discretion of the trial court. *State v. Dale*, 113 Ariz. 212, 550 P.2d 83 (1976); *State v. Buggs*, 108 Ariz. 425, 501 P.2d 9 (1972); *State v. Williams, supra* ; 8 Moore's Federal Practice, § 14.02[1], *supra.*

2. Rule 13.4(a) provides:
 "Severance.
 "a. In General. Whenever 2 or more offenses . . . have been joined for trial, and severance of any or all offenses . . . is necessary to promote a fair determination of the guilt or innocence of any defendant of any offense, the court may on its own initiative, and shall on motion of a party, order such severance."

■ Thus, in this case, if the trial court properly concluded, as a matter of law, that a misjoinder of offenses occurred under Rule 13.3(a), its granting of a new trial on this ground is conclusive and we need not look further to determine whether prejudice resulted to the defendant from that joinder.

We therefore embark upon a determination as to whether as a matter of law, the 53 count indictment against the defendant complied with the criteria of Rule 13.3(a). This rule provides three categories of offenses which lay the foundation for joinder: (1) they are "of the same or similar character" or (2) they are "based upon the same conduct," or (3) they are "part of a common scheme or plan."

The defendant concedes and we agree that all of the bribery counts are of the "same or similar character." The same may be said of all the forgery counts and the embezzlement counts. However, the defendant argues and we likewise agree that bribery is not of the "same or similar character" as forgery; nor is embezzlement of the "same or similar character" as bribery; nor is forgery of the "same or similar character" as embezzlement. We therefore conclude under Rule 13.3(a)(1), that all the forgery counts could be joined and that all the embezzlement counts could be joined and that all the bribery counts could be joined, but that under the "same or similar" test these separate classes could not be joined with each other.

■ We then pass on to the determination as to whether the joinder was proper under the "same conduct" test. This requires a definition for joinder purposes of the phrase "based upon the same conduct or otherwise connected together in their commission" as used in Rule 13.3(a)(2). Based upon the Federal Rules of Criminal Procedure 8(a) and other state rules similar to Rule 13.3(a)(2), we believe that the proper interpretation of that phrase is, that if the offenses arose out of a series of connected acts and the offenses are provable by the same or basically the same evidence, or

evidence of one offense necessarily overlaps or throws light upon another offense, then the offenses are properly joined under Rule 13.3(a)(2). *McElroy v. United States*, 164 U.S. 76, 17 S.Ct. 31, 41 L.Ed. 355 (1896); *James v. United States*, 416 F.2d 467 (5th Cir. 1969); *Walker v. Superior Court*, 37 Cal.App.3d 938, 112 Cal.Rptr. 767 (1974).

■ We simply find there is no pool of common evidence which tends to prove all the various counts alleged to have been committed by the defendant, nor does the state seriously argue that such exists except for the relationship of the defendant discussed below. We therefore hold that the joinder of all of the 53 counts against the defendant cannot be sustained under Rule 13.3(a)(2).

What the state does rely on is that there existed a "common scheme and plan" whereby Jones used "his public position of trust to illegally take money under the auspices of his office for his own personal gain;" and that "all the crimes were committed by appellee Jones in his capacity as executive director."[3] The state in the final analysis relies upon the defendant's status in order to justify the joinder in this case. We hold that such reliance is misplaced.

■ The Arizona Supreme Court has defined the type of "common scheme or plan" that is necessary to provide a joinder of offenses under Rule 13.3(a)(3), in *State v. Dale*, 113 Ariz. 212, 215, 550 P.2d 83, 86 (1976):

"The phrase 'common scheme or plan' as employed in Rule 13.3(a) bears the same meaning as 'common scheme or plan' used in the context of the exception to the rule against the use of evidence in one prosecution tending to prove the commission of a crime distinct and independent of the one for which the accused is on trial."

The evidentiary rule is that there is a common scheme or plan if the proof of one crime tends to prove or establish the other. *State v. Downing*, 109 Ariz. 456, 511 P.2d

3. The quotes are from the state's briefs in this matter.

638 (1973); *State v. Moore,* 108 Ariz. 215, 495 P.2d 445 (1972); *State v. Martinez,* 67 Ariz. 389, 198 P.2d 115 (1948).

Utilizing this test, it is apparent that simply because Jones as executive director is guilty of bribery, does not tend to prove that Jones as executive director is guilty of embezzlement.

The state has cited two federal cases which it contends hold that the mere fact of status is a sufficient "common scheme or plan" to allow joinder of unrelated offenses: *United States v. Isaacs,* 493 F.2d 1124 (7th Cir. 1974) and *United States v. Weber,* 437 F.2d 327 (3rd Cir. 1970). Upon analysis, *Isaacs* is not a "status" case but rather deals with crimes connected in their commission, that is, the taking of bribes by the former governor of Illinois. *Weber,* on the other hand, apparently holds that a union leader's plan to ". . . control pipeline construction in New Jersey for his own pecuniary benefits"[4] justified the joinder of unrelated offenses growing out of his position as union leader.

We reject the holding in *Weber* because it does not comport with the Arizona definition of common scheme and plan. Moreover, *Weber* is not in accord with other federal decisions in the area. *See, United States v. Quinn,* 365 F.2d 256 (7th Cir. 1966) (holding crimes committed by director of federally insured savings and loan association and related to that business, not a "common scheme and plan"); *United States v. Winchester,* 407 F.Supp. 261 (D.C.Del., 1975) (holding unrelated crimes committed by former director of Federal Housing Authority and related to that position were not part of "common scheme or plan.")

Finally, the underlying rationale of the rule against misjoinder is that the combining of two or more offenses may greatly enhance the chances of conviction on one because the jury may feel that where there is smoke there is fire. *See,* 8 Moore's Federal Practice § 8.04[2] at 8–16 (2d ed., 1965). In our opinion, allowing joinders based strictly on the status of the offender is too tenuous a connection to avoid the rationale of the rule. *See,* dissenting opinion of Stevens, J., in *United States v. Barrett,* 505 F.2d 1091, 1110 (7th Cir. 1974). To hold otherwise would logically allow all robberies committed by a professional robber to be joined merely because they were committed by a person in that profession.

Having determined that the misjoinder of offenses occurred under Rule 13.3(a), the trial court properly granted a new trial. Upon that new trial based upon our previous discussions and the concessions made by the defendant in this appeal, it would be proper for the state to join all the bribery charges in one trial; or to join all of the charges arising out of the S.R.O. and Shasta schemes in one trial; or to join all of the remaining embezzlement charges in one trial; or to try the grand theft separately.

Since we affirm the trial court on the basis of its misjoinder ruling, we need not reach the issues of whether assuming a proper joinder was present, prejudicial joinder resulted, or whether the failure to disclose the interview with the Glaspies constituted error.

Order granting a new trial is affirmed.

HAIRE, J., concurs.

EUBANK, Presiding Judge, dissenting.

First, I disagree that the trial court's determination of a misjoinder under Rule 13.3(a), Rules of Criminal Procedure, 17 A.R.S., and its grant of a new trial "is conclusive" on this court. In my opinion the question before us is whether the trial judge abused his discretion in granting a new trial on the basis of misjoinder. *See State v. Mincey,* 115 Ariz. 472, 566 P.2d 273 (1977).

Second, I disagree that the bribery, forgery, and embezzlement counts that were joined in the same indictment were not crimes of "same or similar character," as permitted by Rule 13.3(a), Rules of Criminal Procedure. According to the Commentary to § 1.1 of ABA Standards: Joinder and

4. *United States v. Weber,* 437 F.2d 327, 333 (3rd Cir. 1970).

Severance, this language "same or similar character" was taken from Federal Rule of Criminal Procedure 8(a). In *Finnegan v. U. S.*, 204 F.2d 105 (8th Cir.), *cert. denied*, 346 U.S. 821, 74 S.Ct. 36, 98 L.Ed. 347 (1953), the court, interpreting the "same or similar character" language of Rule 8(a), approved bringing multiple counts against a Director of Internal Revenue involving conflict of interest and bribery counts. The court said that all the offenses, in effect, charged a government official with taking the part of private interests in matters in which the government was a party. The joinder was proper since all of the counts involved directly or indirectly the use of official position for the benefit of private interest for a pecuniary consideration. The counts were, therefore, "same or similar character" since they were designed to protect the government.

A good analysis of the federal cases is found in *United States v. Barrett*, 505 F.2d 1091, 1105 (7th Cir. 1974), where the court approved joinder of charges of mail fraud, bribery, and tax evasion, since all counts arose out of Barrett's misuse of his public office for private gain. *See* 8 Moore's Federal Practice ¶ 8.05[2].

Looking at the "same or similar character" of the crimes charged against appellee from the state's standpoint: The Arizona Coliseum and Exposition Center Board is a state agency. See A.R.S. §§ 3–1001 to 3–1012. No employee of the Board "shall, either directly or indirectly, have any financial interest in a contract made by the board." A.R.S. § 3–1002(B). If they have such a financial interest, it is a crime (misdemeanor). A.R.S. § 3–1002(C). The Board, per § 3–1003(A)(5), shall employ an Executive Director, whose contract shall stipulate that he can be terminated by 90 days notice. His duties and qualifications are set out at §§ 3–1003.01 and 3–1003.02. He is the chief executive and administrative officer of the center. He is responsible for fixing the duties of all employees, submitting monthly reports to the board, and acting as the Center's fiscal agent with responsibility for the processing of all cash receipts, the internal accounting, the preser-

vation of assets, and the control of all books and accounting records. Section 3–1005 requires all funds collected by the board to be deposited "promptly" with the state treasurer. By virtue of the foregoing, Jones, by definition, was an "officer" or "public officer" of the state. *See* A.R.S. § 38–101. All of the crimes charged arose entirely out of acts involving his position as executive director, his control of the books and records, and his misuse of his office. The federal cases view the "character" of crime for joinder purposes from this viewpoint. This view is supported by the broad joinder recommended by the ABA Standards, *supra*.

Third, a good argument can be made that the various counts were properly joined since they related to a "common scheme or plan." This argument is closely aligned to the argument, based on the "same or similar character" of the crime, discussed above. Under Rule 13.3(a)(3), Rules of Criminal Procedure, offenses are properly joined if evidence of a separate crime would be admissible in evidence at the trial of one count to prove motive, intent, absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related to each other that the proof of one tends to establish the other or others, or identity of the person charged with the commission of the crime. *See State v. Dale*, 113 Ariz. 212, 215, 550 P.2d 83, 86 (1976). Here, taking all inferences in favor of the judgment, Jones's common scheme was to misuse his public office and public trust for his own personal pecuniary benefit to the detriment of the state. The evidentiary manifestations of his common scheme or plan are the various counts charged and proven: bribery, forgery, theft and embezzlement. The common denominator is that "but for" his position as Executive Director, he could not have performed and gained as he did.

Finally, I believe the joinder was correct under Rule 13.3(a)(2), Rules of Criminal Procedure, since the counts were based on the same conduct by Jones: misfeasance and malfeasance, and were otherwise connected, as discussed above.

For these reasons I believe the trial court abused its discretion by granting the appellee's motion for a new trial. I would therefore reverse the order and reinstate the judgment.