## CHARLES H. GRISWOLD v. STATE.

No. A-3043.    Opinion Filed Dec. 9, 1922.
Rehearing Denied March 12, 1923.
(212 Pac. 1018.)

(Syllabus.)

1. **Embezzlement—Public Officer's Embezzlement of Particular Gross Amount by Series of Appropriations of Small Amounts.** A public officer charged with the safekeeping and disbursement of public money may, by a series of personal appropriations of small sums of such public fund, render himself liable to prosecution for the embezzlement of a particular gross amount, as constituting but one offense, under the provisions of our statutes defining embezzlement of funds willfully appropriated to uses not in keeping with his official trust.

2. **Embezzlement—Demand for Proper Disbursement of Public Funds upon Refusal of Officer in Charge not Necessary to Complete Offense.** Where a public officer willfully fails or refuses to account for, pay, and disburse public money in his charge as the law directs, a demand for such payment is not necessary to complete the crime of embezzlement as defined by statute. Under such circumstances, the law itself constitutes sufficient demand.

3. **Indictment and Information—Refusal to Compel State to Elect upon Which One of Two Counts it Would Rely, not Error.** Where an information stated but one offense, but this was stated in two separate counts or paragraphs, there was no error committed by the court in refusing to require the county attorney to elect on which count or paragraph the state would rely.

4. **Evidence—Embezzlement by Public Officer—Books and Records of Officer Admissible Though All not in His Handwriting.** The books and records of a public officer were properly admitted in evidence as tending to show the shortage or defalcations as charged, without a specific showing that all of such records were made by the accused or were recorded in his handwriting.

5. **Same—Records Kept by Accused Prima Facie Evidence of Transactions.** An instruction to the effect that the records kept by the accused were prima facie evidence of the transactions recorded held proper.

Appeal from District Court, Logan County; John P. Hickam, Judge.

Charles H. Griswold was convicted of embezzlement, and he appeals. Affirmed.

John A. Remy and James Hepburn, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall, Asst. Atty. Gen., for the State.

BESSEY, J.    Charles H. Griswold, plaintiff in error, hereinafter referred to as the defendant, was on January 16, 1917, convicted of the embezzlement of public funds intrusted to him as clerk of the district court of Logan county during the years 1911 and 1912. His punishment by the verdict of the jury was fixed at imprisonment in the penitentiary for a period of one year. From the judgment rendered on the verdict he appeals.

The evidence in this case shows that the defendant during the years 1911 and 1912, while he was clerk of the district court, from time to time held out of his official funds, for his own personal use, sums aggregating $1,999.09, as found by one expert accountant, or $2,010.19, as found by another, over and above all just credits. A shortage in a large amount had been admitted by the defendant, according to the testimony of his successor in office. Demand was made by defendant's successor in office for the payment of these delinquencies, to which the defendant made no response.

Upon the facts the defendant made no defense except to show by numerous witnesses that he was and had been a person of good moral character; that the various sums making up the aggregate shortage, if they constituted embezzlement, were numerous and separate offenses; and that the proof adduced did not support the allegations of the complaint.

The several assignments of error here urged may be summarized as follows:

First. The court erred in overruling defendant's demurrer to the information and other motions attacking its sufficiency.

Second. That the evidence was insufficient to sustain the conviction.

Third. Errors alleged in the instructions to the jury.

The vital portion of the information is as follows:

" * * * That while the said Charles H. Griswold was acting as such clerk of the district court of said county of Logan, as aforesaid, he, the said Charles H. Griswold, received, collected and took into his possession, and under his official capacity, aforesaid, and by virtue of his office of clerk of the district court of the county of Logan, state of Oklahoma, as aforesaid, at different times and from day to day, during the time from February 7, 1911, to and including January 7, 1913, many and various sums of money, checks, drafts, valuable securities, effects, vouchers, for money and other evidences of indebtedness, all of which was by him, the said Charles H. Griswold, received and collected as money, and is legally chargeable against him as money, and which came into his possession and under his control through and by virtue of his trust as such clerk of the district court of Logan county, Okla.

"And that the aggregate amount so collected and received by him, and that came into his possession, and under his care, during said period by virtue of said office, as aforesaid, was $25,317.08. That said money, checks, drafts, valuable securities, effects, vouchers for money, and other evidences of indebtedness, as aforesaid, received and collected by the said Charles H. Griswold, as aforesaid, were so collected by the said Charles H. Griswold for and belonging to, and were the goods, chattels and property of various persons, classes of persons, estates and corporations who were litigants in the district court of said county from the 7th of February, 1911, to and including the 7th of January, 1913, and of the said Logan county. That said sum of $25,317.08 was collected as

court costs, witness fees, judgments, fines and penalties, forfeited bonds and recognizances, and money received by order of said court, as shown by the books, records and papers of said office during said period. That it was the official duty of the said Charles H. Griswold, as such clerk of said court, to receive said money, and to pay out the same to the county treasurer of said county, and to the various litigants to whom said money legally belonged, according to law. · That said money, checks, drafts, valuable securities, effects, vouchers for money, and other evidences of indebtedness, as aforesaid, were received and collected by the said Charles H. Griswold, and the same came into his possession and under his care by virtue of said office of clerk of the district court of Logan county, Okla., and were, by the law of the state of Oklahoma, required to be collected and received by him, the said Charles H. Griswold, as clerk of the district court of said county, as aforesaid; and the said Charles H. Griswold of the money, checks, drafts, valuable securities, effects, vouchers for money, and other evidences of indebtedness, as aforesaid, that had been collected and received by him, as aforesaid, during said period and that had come into his possession and under his care by virtue of his said office of clerk of the district court of said county, as aforesaid, did, at and in the county of Logan, in the state of Oklahoma, and within the jurisdiction of this court, on the 7th day of January, 1913, unlawfully, willfully, intentionally, fraudulently and feloniously embezzle and convert to his own use, and not in the due and lawful execution of his trust, the sum of $2,010.91, in good and lawful money of the United States, without the assent of the county of Logan, aforesaid, or of any of the persons, classes of persons, estates or corporations above mentioned, and failed, refused and neglected to turn over said sum of $2,010.91 to his duly elected, qualified and acting successor in and to said office, as required by law, contrary to and in violation of the statute in such case made and provided and against the peace and dignity of the state.

"Second Count.

" * * * The said Charles H. Griswold, as such officer, and clerk of the district court of said county, was then

and there instructed, and did then and there have in his possession and under his care, by virtue of his office, certain moneys, to wit, the sum of $2,010.91, the property and effects of the said county of Logan, and of the various litigants in said court, and of the value of $2,010.91 in good and lawful money of the United States, and the said Charles H. Griswold did then and there unlawfully, fraudulently, and feloniously embezzle and convert to his own use and not in the due and lawful execution of his trust, without the assent of the said county of Logan, or of the persons thereunto authorized, all of the said money, as aforesaid, with the care and custody of which he, the said Charles H. Griswold, was then and there, as aforesaid, intrusted, and did then and there have under his control by virtue of his office of clerk of the district court of said county, aforesaid, contrary to and in violation of the statutes in such cases made and provided and against the peace and dignity of the state.''

The statutes of this state in force and prescribing the fiscal duties of court clerks during the years 1911 and 1912 were sections 3213, 3214, and 4286, R. L. 1910.

''3213.    Any county, township and district officer who is required by law to make monthly or quarterly reports to the board of county commissioners who fails or refuses to make such reports, or who makes a false or fraudulent report, shall be deemed guilty of a misdemeanor and in addition to his punishment he shall forfeit his office; and when any such officer shall fail or refuse to account for or to pay over any money in his official capacity, he shall be deemed guilty of embezzlement, and in no case shall any county officer retain any perquisites of his office.''

''4286.    Upon the death, resignation, suspension or removal from office of any officer, or upon the expiration of his term, all public moneys, books, records, accounts, papers, documents and property of other kind in his hands or held by him by virtue of his office, shall be delivered to his successor.''

If the willful failure of the defendant to account for and pay over the public moneys monthly, as the law directs, and the personal retention of these several sums, not in keeping with his trust, constitutes but one offense, then the information, we think, is sufficient, under the provisions of section 3213, supra. If a willful failure to account for and pay over to his successor in office, coupled with a personal use of the trust funds, although the shortage was made up of numerous separate items, constitutes but one offense, the information would be sufficient on that theory. The defendant did both; he failed to report and pay monthly, as the law directs, and he failed to pay to his successor in office, as the law directs; and both delinquencies, according to the testimony, were the result of a personal use, from time to time, of portions of his official funds. Did this constitute a series of small embezzlements, or may the willful retention and misapplication of the aggregate be considered as constituting but one offense?

The information in this case was drawn under the theory that the defendant had committed but one offense, in that he, as a public officer, failed to account for official funds received by him by reason of a series of petty and continuous conversions of official money in small sums—manifestly difficult, if not impossible, to prove. Such a pleading in a case of embezzlement is not only permissible, but is supported by the highest authority, in construing statutory regulations similar to ours relating to misapplication of public funds. In Ruling Case Law, vol. 9, pp. 1290 and 1291, the rule is stated as follows:

"There are authorities which hold that where the crime consists, not in the embezzlement of a single definite quantity of coin or bills, but in a failure to account for a number of small sums—a series of petty and continuous peculations— where it would manifestly be impossible, probably for the de-

fendant himself, but much more for the prosecution, to state of what the money embezzled consisted, and allegation of a particular amount is sufficient. * * * In the case of embezzlement by a public officer considerable latitude is permitted in the description of the money embezzled, for it is at times impossible to trace the particular fund in the case of an officer handling public money coming through so many avenues and through so many different individuals; the allegations of a particular gross amount is therefore usually held sufficient. For example, in an indictment against a county treasurer it is not necessary to describe specifically the embezzled funds and to name the several owners thereof. In his official capacity a county treasurer may collect taxes which are eventually divided and paid to the state, the county, the township and various other municipalities and institutions.''

See, also, the following cases as applying to the wrongful personal use of accumulated trust funds: State v. Leonard, 56 Wash. 83, 105 Pac. 163, 21 Ann. Cas. 69; People v. McKinney, 10 Mich. 54; Sigsbee v. State, 43 Fla. 524, 30 South. 816; State v. Bickford, 28 N. D. 36, 147 N. W. 407, Ann. Cas. 1916D, 140; Jackson v. State, 76 Ga. 551; State v. Smith, 13 Kan. 274; State v. Graham, 13 Kan. 299; State v. Ensley, 177 Ind. 483, 97 N. E. 113, 34 Ann. Cas. 1306; Territory v. Hale, 13 N. M. 181, 81 Pac. 583, 13 Ann. Cas. 551; Ker v. People, 110 Ill. 627, 51 Am. Rep. 706; 4 Am. Cr. Rep. 211; Goodhue v. People, 94 Ill. 37.

In the case of State v. Bickford, supra, the court said:

''What the state was developing in its proof was not an isolated embezzlement, but a longdrawn out and intricate scheme. This, under its general charge in the information, it was entitled to do. The reasons for the rule are clearly set forth by the Supreme Court of Illinois in Ker v. People, 110 Ill. 627, 647, 51 Am. Rep. 706, 4 Am. Crim. Rep. 211, when in its opinion it says : 'It is insisted that the evidence shows an accumulation of offenses, and for that reason it was error in

the court to deny defendant's motion to compel the prosecution to elect upon what alleged act of larceny or embezzlement a conviction would be asked. The court, by its ruling, submitted all the evidence touching the embezzlement of funds and securities by defendant, to the jury, and it is not perceived how it could have properly done otherwise. Embezzlement is a crime defined by statute, and it was entirely competent for the Legislature to declare what acts would constitute the crime, and fix the measure of punishment. One element that enters into the statutory definition of embezzlement is the fiduciary or confidential relation. * * * Under this rule, which is certainly a wise one, it was proper the court should permit all the evidence of what defendant did by reason of his confidential relations with the banking firm whose clerk he was, to go to the jury, as was done, and if the jury found, from the whole evidence, any funds or securities for money had been embezzled or fraudulently converted to his own use, by defendant, it was sufficient to maintain the charge of embezzlement.' "

In cases like this it is unnecessary to allege that a demand for payment has been made and refused.

"Such requirement, it has been urged, would be a direct encouragement of laxity of duty, for an agent, and especially a public officer, could retain money that came into his possession for an indefinite time; then if an investigation would disclose that such money had been retained, all that the accused would have to do would be to pay it over on demand." 9 R. C. L. 76.

"The statute itself demands the performance of the duty, and fixes a penalty for the felonious failure to do it. * * * On this theory (that a demand is necessary), the only risk assumed by a retiring officer, in fraudulently converting to his own use all the public funds in his hands at the termination of his term of office, would be the lack of financial ability to meet the demand when made, and the act could never practically apply to the felonious defalcations of officers except when such officers might be so unfortunate as to be in-

solvent. Where the relief sought by the enactment of the law is, as here, the better safeguarding of public funds against the conversion thereof by dishonest officials, it would be absurd to impute to the lawmaking body the further intention of making public funds the prey of such public officers." State v. Ensley, 177 Ind. 483, 97 N. E. 113, Ann. Cas. 1914D, 1306.

In this case the defendant was charged with being a public officer, and a collector of money in his official capacity and holding such in his fiduciary capacity, and instead of paying these funds to the persons entitled thereto he retained them, went out of office, and failed and refused to turn over to his successor these funds which came into his hands by virtue of his office and trust; that he converted this money to his own use and benefit, and not in the due and lawful execution of his trust. A charge so made in the language of the statute is sufficient.

15 Cyc. 523, lays down the following rule:

"In an indictment or information against a public officer for embezzlement it is sufficient to follow the statute and allege the acts and facts therein declared to constitute the crime. It is not necessary to negative a matter of defense." —citing a number of cases, a sample of which, from 18 Cent. Dig. 700, reads as follows, in part:

"An indictment alleging that defendant county treasurer, who was duly elected to said office of public trust, did feloniously and fraudulently embezzle a large sum of money (stating the amount) which was then and there in his possession by virtue of his office, is sufficient. Goodhue v. People, 94 Ill. 37."

Upon the question of requiring the county attorney to elect under which count he would proceed with the prosecution, section 5741, R. L. 1910, provides that "the same offense may be set forth in different forms or degrees under different

counts." Under such circumstances an election cannot be required. Boone v. State, 15 Okla. Cr. 29, 175 Pac. 61; Hughes v. State, 7 Okla. Cr. 117, 122 Pac. 554; 14 R. C. L. 199, 201.

Defendant complains that, because the court permitted the shortage to be shown in part by the books kept by the defendant and his deputies, the evidence was insufficient to sustain a verdict beyond a reasonable doubt; that the defalcation may have been made by some deputy, or that there may have been mistakes in the bookkeeping. The negative of this inference is shown by other testimony. The official books and records required to be kept were competent evidence, to be given such weight as the jury might determine. These records showed a shortage, and the defendant by his conduct admitted it. A personal use by defendant of many of the items going to make up the shortage was shown. A personal defalcation by defendant, as shown by his official records, was well corroborated by other evidence.

Complaint is also made of certain instructions of the court, particularly of the two instructions here quoted:

"(6) The court instructs the jury that under our law, any officer upon the expiration of his term of office, all public moneys, books, records, accounts, papers, and documents of every kind in his hands or held by him, by virtue of his office, shall be delivered to his successor in office, and the fraudulent failure or refusal to account for and pay over the funds in his hands being established, the same is prima facie evidence of its conversion."

"(7) The phrase 'prima facie evidence' is such evidence as in the judgment of the law is sufficient to establish the unlawful intent, unless rebutted or on the contrary proved; yet it does not make it obligatory upon the jury to convict after the presentation of such proof. Whether or not such evidence is sufficient to overcome the presumption of innocence of the defendant, and to establish his guilt beyond a

reasonable doubt, when all the evidence, including the presumptions, is considered, is for the determination of the jury.''

These instructions, in connection with the others given, amply safeguarded the rights of the defendant. The instructions quoted simply state the law defined in section 4286, R. L. 1910, requiring an officer intrusted with public money to turn over all funds so held to his successor in office. This the evidence shows the defendant willfully and fraudulently failed to do. A personal use of the fund was willful as well as a fraud upon the state and the county to which it belonged.

The judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.