Edith HOWARD, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff) (Two Cases).

Nos. 86–237, 86–238.

Supreme Court of Wyoming.

Sept. 9, 1988 *.

Dissenting Opinion Sept. 23, 1988.

Rehearing Denied Nov. 8, 1988.

Ronald L. Brown of Ronald L. Brown, Attorney at Law, P.C., and Burton W. Guetz, of Burton W. Guetz, Attorney at Law, P.C., Casper, for appellant.

Joseph B. Meyer, Atty. Gen. John W. Renneisen, Deputy Atty. Gen., and Karen A. Byrne, Asst. Atty. Gen., for appellee.

Before CARDINE, C.J., THOMAS, URBIGKIT and MACY, JJ., and BROWN, J., Retired.**

URBIGKIT, Justice.

Appellant Edith Howard, Natrona County Treasurer, was charged with embezzlement and presenting false vouchers in two

---

* Case assigned May 15, 1987; opinion circulated for comment October 26, 1987.

** Retired June 30, 1988.

separate informations of ten counts, and convicted of one count of embezzlement, one count of larceny, one count of failure to account, and three counts of submitting false vouchers. We affirm in part and reverse in part with minimal effect since the sentences provided concurrent penal confinement.

## I. FACTS

Howard, while in office as County Treasurer, was charged in the two separate informations with having failed to account for some funds collected by her office, converting some of those funds to her own use, and submitting false vouchers for the purchase of a battery and for out-of-town travel. While some of the money may have come from miscellaneous lien searches, the large part came from either postage fees or county charges for repayment of insufficient-fund checks. Two special-fund handling arrangements had permitted these funds to be separately received, retained, and used without the utilization of a proper accounting system.

As County Treasurer, Howard established a system allowing purchase of license plates by mail. During the time when new tabs for auto licenses were used, the County would pay the mailing postage; however, when actual plates were mailed, the County required postage reimbursement, and these payments were converted to cash in the County Treasurer's office. Another cash system was established in 1981 for collection of fees for insufficient-funds checks ranging from $5 to $20 for each bad check. When the County residents who had written uncleared checks covered their obligations, the County would also back-charge the bad-check fee, in addition to the check amount, as a collection expense. Although all monies received by the County were supposed to be written up and handled as miscellaneous receipts, it became obvious upon audit that postage and bad-check monies were neither properly recorded nor deposited.

Generally these funds were collected in cash, and if not in cash, converted into cash by the office employees, and then at some time given to Howard. Some amounts were expended for office postage without any office vouchering or record-keeping procedure. Unfortunately for Howard and unknown to her, one of the two primarily involved deputies who generally processed some of the money maintained records of what had been given to Howard by entry in a "green book" ledger. Another employee also retained a portion of the total funds as periodically used for office expenditures. The remaining cash balance was delivered to Howard upon retirement of that employee.

Prosecution was based upon an extended CPA audit analysis. A convoluted, confused, and inexact receipt-and-expenditure process without following any normalized governmental budgetary-expenditure system was found by the auditors to have been the process used in the office to handle these specialized receipts.

## II. CHARGES

Following the audit and resulting investigation, Howard was charged in Criminal Action Information No. 9691:

Count I: On or about December 27, 1982 to March, 1983, Howard failed to account for $16,037.64 in violation of W.S. 6-7-306 (now W.S. 6-5-111, 1983 Replacement, effective July 1, 1983). Convicted and sentenced 18 to 36 months confinement.

Count II: On or about December 27, 1982 to March, 1983, Howard converted to her own use $7,037.64 in violation of W.S. 6-7-305 (now W.S. 6-5-109, 1983 Replacement, effective July 1, 1983). Acquitted.

Count III: On or about July 2, 1984 through July 30, 1984, Howard converted to her own use $3,420.79 in violation of W.S. 6-3-402(b) (1983 Replacement). Convicted and sentenced 18 to 36 months; fined $7,500; and ordered to pay restitution of $3,420.79.

Count IV: On or about April 23, 1984 through July 30, 1984, Howard failed to account for $4,343.79 in violation of W.S.

6-5-111 (1983 Replacement). Convicted and sentenced 12 to 18 months.[1]

Count V: On or about March 1, 1983, Howard submitted a false claim or voucher of $61.20 for a battery in violation of W.S. 6-8-102 (now W.S. 6-5-303, 1983 Replacement). Convicted and sentenced 12 to 18 months with restitution of $61.20.

Criminal Action Information No. 9692 charged:

Count I: On or about January 17-24, 1985, Howard submitted a false voucher for $1,089.58 in violation of W.S. 6-5-303(b) (1983 Replacement). Acquitted.

Count II: On or about February 11-28, 1985, Howard submitted a false voucher for $505.25 in violation of W.S. 6-5-303(b) (1983 Replacement). Convicted and sentenced 12 to 18 months with restitution of $505.25.

Count III: On or about March 8-21, 1985, Howard submitted a false voucher for $388.43 in violation of W.S. 6-5-303(b) (1983 Replacement). Convicted and sentenced 12 to 18 months with restitution of $388.43.

Count IV: On or about April 12-23, 1985, Howard submitted a false voucher for $273.59 in violation of W.S. 6-5-303(b) (1983 Replacement). Acquitted.

Count V: On or about May 16, 1985, Howard submitted a false voucher for $863.11 in violation of W.S. 6-5-303(b) (1983 Replacement). Acquitted.

Howard was convicted of six counts consisting of three counts of failure to account-embezzlement, and three counts of submitting false vouchers. All confinement sentences were to be served concur-

rently. We affirm five convictions and reverse one.

### III. ISSUES ON APPEAL

Although ordered differently than presented by Howard, the issues on appeal are:

1. Error in not requiring the State to elect between Counts I and II, and between Counts III and IV of Information No. 9691, or otherwise declare a merger of the offenses.

2. Error by permitting joinder of all ten counts.

3. Counts I, II, III, and IV of Information No. 9691 should have been joined in one count.

4. Insufficient evidence to support conviction and judgment:

(a) Proving a demand was made upon Howard as required to sustain a conviction under Counts I and IV of Information No. 9691.

(b) For submitting a false voucher, Count V, Information No. 9691 (battery purchase).

(c) For submitting false vouchers, Counts II and III, Information No. 9692 (Denver trips).

### IV. MERGER, MULTIPLICITY AND DOUBLE JEOPARDY

■ Howard contends the double-jeopardy clauses of the United States Constitution and the Wyoming Constitution were violated in denying merger of Count I with Count II and Count III with Count IV. Because Howard was acquitted of Count II, this analysis deals only with Howard's

---

**1.** The numerical relationship of the funds involved in these four counts justifies analysis.

Count I involved the Danaher money as designated from the employee who maintained a record and delivered the money to Howard.

Count II involves the same money reduced, however, by audit determination that of the total sum, about $9,000 was spent for County purposes through the County Treasurer's office.

Count III, designated as the Brannan money, was collected by Brannan; upon retirement, and after some portion was deposited, the balance of $3,223.14 was delivered to Howard in

an envelope, with a Swanson bad-check proceeds of $197.65, totaling $3,420.79.

Count IV is even more complex. It is composed of the Brannan money, $3,223.14, the Swanson check, $197.65, and miscellaneous postage monies of $923, totaling $4,343.79. As a consequence, all of this money was included in the three prior charges, except possibly the $923 in postage money for 1984. The duplication was recognized by the jury in the acquittal in Count II, but was not to be similarly determinative in the duplicative result in Count IV.

argument about merger of Count III and Count IV. We agree.

The double-jeopardy provision in the Fifth Amendment of the United States Constitution, reads, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." The double-jeopardy provision of Wyo. Const. art. 1, § 11 reads, "nor shall any person be twice put in jeopardy for the same offense." In addition, equal protection is provided by Wyo. Const. art. 1, § 11:

> No person shall be compelled to testify against himself in any criminal case, nor shall any person be twice put in jeopardy for the same offense. If a jury disagree, or if the judgment be arrested after a verdict, or if the judgment be reversed for error in law, the accused shall not be deemed to have been in jeopardy.

"The double jeopardy clause of the Fifth Amendment is applicable to the states through the Fourteenth Amendment." *Birr v. State*, 744 P.2d 1117, 1119 (Wyo. 1987) (citing *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)). The clause extends its protections to prohibit a second prosecution for the same offense after acquittal, to prohibit a second prosecution for the same offense after conviction, and to prohibit multiple punishment for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). It is the third protection that is implicated here.

> The ban on double jeopardy has its roots deep in the history of occidental jurisprudence. "Fears and abhorrence of governmental power to try people twice for the same conduct is one of the oldest ideas found in western civilization."

Id. at 733, 89 S.Ct. at 2093, Douglas, J., concurring (quoting *Bartkus v. People of the State of Illinois*, 359 U.S. 121, 151–55, 79 S.Ct. 676, 695–97, 3 L.Ed.2d 684, reh. denied 360 U.S. 907, 79 S.Ct. 1283, 3 L.Ed. 2d 1258 (1959), Black, J., dissenting). Society has more than a legitimate interest in assuring that the government does not violate the rights of its individual citizens and in preventing abusive postures by the government as seen in *King v. United States*, 69 App.D.C. 10, 98 F.2d 291 (D.C. Cir.1938).

> "The Government's brief suggests, in the vein of The Mikado, that because the first sentence was void appellant 'has served no sentence but has merely spent time in the penitentiary;' that since he should not have been imprisoned as he was, he was not imprisoned at all."

*North Carolina*, 395 U.S. at 721, n. 17, 89 S.Ct. at 2078–79, n. 17 (quoting *King*, 98 F.2d at 293–94).

The prohibition against double jeopardy when an information charges a single offense in several counts is often termed multiplicity. C. Wright, Federal Practice and Procedure: Criminal 2d § 142 at 469 (1982). See *United States v. Kimberlin*, 781 F.2d 1247, 1252–55 (7th Cir.1985), cert. denied 479 U.S. 938, 107 S.Ct. 419, 93 L.Ed. 2d 370 (1986). The multiplicity doctrine is based upon the double-jeopardy clause of the Fifth Amendment, which " 'assur[es] that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.' " See *United States v. Fiore*, 821 F.2d 127, 130 (2d Cir.1987) (quoting *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed. 2d 187 (1977)). An excellent discussion is presented by the Kansas Supreme Court in *State v. Cathey*, 241 Kan. 715, 741 P.2d 738 (1987).

Under the federal standard, an analysis of double jeopardy in this situation begins by looking to legislative intent in creating separate statutory offenses. The dominant inquiry is whether the legislature intended these offenses to be separate offenses or the same offense. The test in the multiplicity-double-jeopardy cases is the statutory definition, not the proof utilized in the particular case. *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *United States v. Muhammad*, 824 F.2d 214 (2d Cir.1987), cert. denied —— U.S. ——, 108 S.Ct. 716, 98 L.Ed.2d 666 (1988).

Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine

whether the legislature * * * intended that each violation be a separate offense. *Garrett v. United States,* 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764, reh. denied 473 U.S. 927, 106 S.Ct. 20, 87 L.Ed.2d 698 (1985).

Where legislative intent is uncertain, that intent is inferred from legislative history, *Simpson v. United States,* 435 U.S. 6, 13, 98 S.Ct. 909, 913, 55 L.Ed.2d 70 (1978), the purpose of each statute, "[w]here two statutes are intended to suppress different evils, the acquittal or conviction on one will not prevent prosecution of the other," *Goodman v. State,* 601 P.2d 178, 185 (Wyo. 1979), and the Blockburger test:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Since the search is for legislative intent, where "legislative intent is clear from the face of the statute or the legislative history," Blockburger does not control. *Garrett,* 471 U.S. at 779, 105 S.Ct. at 2412.

While not completely dispositive of this issue, we note the embezzlement by failure to account in Count I, W.S. 6–7–306, is the same as Count IV, W.S. 6–5–111 (1983 Replacement) (Ch. 75, § 3, S.L. of Wyoming 1982), which replaced W.S. 6–7–306 as of July 1, 1983. The question presented by this issue is generally whether Count III, W.S. 6–3–402(b) and (c)(i) (1983 Replacement), and Count IV, W.S. 6–5–111 (1983 Replacement), were intended by our legislature to guard against the same offense. This accommodates the identical funds except for the $923.[2]

W.S. 6–7–306, an embezzlement statute, was replaced by and has elements nearly identical to W.S. 6–5–111 (1983 Replacement). It is the legislative history of W.S. 6–5–111 in replacing W.S. 6–7–306, and the matching of its elements, that convinces us W.S. 6–5–111 is an embezzlement statute designed to curb the evil of embezzlement by public servants. In generic terms, embezzlement embraces failure to account plus conversion.

Looking to W.S. 6–3–402(b), (c)(i), and (d) (1983 Replacement), as revised in 1985, we see in (d) the language:

> Conduct denoted larceny in this section constitutes a single offense embracing the separate crimes formerly known as larceny, larceny by bailee, *embezzlement,* or related offenses.

(Emphasis added.) Our review of W.S. 6–3–402(b) and (c)(i) and 6–5–111, convinces us the legislature did not intend each violation be a separate offense. *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985).

There might not be a problem in convicting Howard of both W.S. 6–3–402 and 6–5–111, if separate evidence was used as proof of each violation. In *State v. Carter,* 714 P.2d 1217, 1220 (Wyo.1986), we said "where there is separate evidence of the two offenses, the offenses cannot be said to have merged." By corollary, where the evidence is the same, the offenses merge. While the record is not clear whether some of the same evidence was used in Counts I and IV by virtue of the confusing stipulation relating to the $923 as 1984 postage collection, the State concedes that all the money used in Count III was also used in Count IV. There can also be a problem in dividing up a course of activity in a criminal complaint such as failure to account, by segmenting the charge. We need not pursue that issue here by virtue of the decision we make.[3]

---

**2.** It is curious that differing from Count II, public property embezzlement, Count III was filed under the general embezzlement statute, now W.S. 6–5–109 (1983 Replacement). The punishment for both has a maximum term of ten years as compared with failure to account of five years. W.S. 6–5–111 (1983 Replacement).

**3.** For an interesting and exhaustive discussion of segmented prosecution on multiple punishment see G. Thomas, *Multiple Punishments for the Same Offense: The Analysis After Missouri v. Hunter or Don Quixote, The Sargasso Sea, and the Gordian Knot,* 62 Wash.U.L.Q. 79 (1984); see also Comment, *Successive Prosecutions and the Continuing Criminal Enterprise: The Double*

The Brannan desk money and the Swanson check were the basis for Count III of Information No. 9691. The Count IV failure to account charge *included that money* as well as the postage sum of nine hundred twenty-three dollars ($923.00) from 1984.

(Emphasis added.) This argument by the State is somewhat confusing in that the State argues against merger upon the basis that the offenses arose from different intents:

> In the present case, the facts support a charging of different offenses. Appellant took advantage of the opportunities presented to convert unaccounted monies to her own use. *The evidence does not support that this was a single continuous intent.*

(Emphasis added.) But yet, when the State argues joinder of the two informations was proper, one of the bases of its characterization was the offenses are "connected together and * * * constitute a common scheme or *plan*" (emphasis added), and more significantly involved itemization of the *same money.*

■ In Carter, 714 P.2d at 1220, where there was a charge of drug possession with intent to distribute and a charge of distributing the controlled substance, we stated:

> [W]here evidence of the sale of a controlled substance is the only evidence to support a possession charge, the offense of possession with intent to distribute and actual distribution of the same substance have merged into a single offense.

In the instant case, we hold that where evidence of embezzlement by larceny is also evidence used to support the charge of a public official's failure to account, these offenses have merged.[4]

Accordingly, we reverse and vacate the conviction of Count IV in that proof of Counts I and III prove the crime then again resulting in Count IV. Whether using a logic, transactional, or separate-evidence test, the County Treasurer should only be subjected to taking the same money one time since she took it only one time. Under the facts as evidenced here, the failure to account and embezzlement could not be demonstrated in the statutory terminology to fit within the criteria of separate evidence in each offense. Our decision is constitutional under the purview of the Wyoming Constitution since interpretative tests are not required under statutory analysis. Clearly, a sequential differentiation between Counts III and IV is not demonstrated, which could in effect provide some justification of consideration of the arguments submitted by the State.[5] See *United States v. Broce*, 781 F.2d 792 (10th Cir. 1986) and *United States v. Beachner Const. Co., Inc.*, 729 F.2d 1278 (10th Cir. 1984). See also G. Thomas, *Multiple Punishments for the Same Offense: The Analysis After Missouri v. Hunter or Don Quixote, The Sargasso Sea and the Gordian Knot*, 62 Wash.U.L.Q. 79 (1984); see also Comment, *Successive Prosecutions and the Continuing Criminal Enterprise: The Double Jeopardy Analysis in Garnett v. United States*, 13 Hastings Const.L.Q. 785 (1986).

## V. IMPROPER MISJOINDER OF SEPARATE CHARGES

On September 11, 1985, the State filed Information No. 9691 charging four counts

---

*Jeopardy Analysis in Garnett v. United States*, 13 Hastings Const.L.Q. 785 (1986).

**4.** Likewise, use of the transaction test which had been historically followed in Wyoming would also afford the same result. *State v. Tobin*, 31 Wyo. 355, 226 P. 681 (1924), and cases cited in *Carter*, 714 P.2d 1217, Urbigkit, J., dissenting.

**5.** In the analysis adopted by this court, we could possibly reverse Count III and affirm Count IV. We will follow the general posture adopted by the trial court in affirming the charge which provided the greater penalty and fine and reverse the lesser as merged in result. If in Count IV Howard had only been charged with a crime involving the $923, we might affirm, even though it really is not clear whether this cash amount was accrued separately from claims of Counts I, II and III since the money could have been part of the $9,000 for which a use accounting could be made. The further problem would be raised in that failure to account is a general course of conduct, while embezzlement is related specifically to funds converted in defined amount.

of embezzlement-related offenses and one count of submitting a false voucher for a battery, and Information No. 9692 charging five additional counts of false vouchers. On October 2, 1985, the State made a motion to join those two informations in one trial pursuant to W.R.Cr.P. 11(a),

> on the grounds that the offenses charged in each Criminal action number are the same or are [of] similar character and are connected together constituting part of a common scheme or plan and that the interest of justice would be served by joinder of these matters for trial.

While there is no written order in the record granting the joinder motion, it was de facto granted when both informations were jointly tried. The record negatively reflects lack of approval by Howard, incrementally supported by trial-time motion for acquittal and post-trial motion for new trial. W.R.Cr.P. 9, 11, 12 and 13 are comparable to F.R.Cr.P. 8, 9, 13 and 14.

The joining of informations or indictments into one trial is controlled by W.R.Cr.P. 12 and not W.R.Cr.P. 11(a). W.R.Cr.P. 11(a) does control W.R.Cr.P. 12 in the negative in that W.R.Cr.P. 12 permits joining of offenses or indictments *if* the offenses or defendants could have been joined in a single indictment or information, which is controlled by W.R.Cr.P. 11. The rule permits joining multiple offenses in one information or indictment where (1) the offenses are of the same or similar character, (2) based on the same act or transaction, *or* (3) based on two or more acts or transactions connected together or constituting part of a common scheme or plan.

> The trial court has no discretion, however, to include in a single indictment offenses or defendants not permitted by Rule 11 to be joined. Such an act would be termed "misjoinder."

*Ostrowski v. State*, 665 P.2d 471, 484 (Wyo. 1983).

In *Pote v. State*, 695 P.2d 617, 623 (Wyo. 1985), we said, "[g]enerally, joinder of offenses is proper, absent compelling reasons for severance" (citing *Linn v. State*, 505 P.2d 1270 (Wyo.), cert. denied sub nom. *Lucas v. State*, 411 U.S. 983, 93 S.Ct. 2277, 36 L.Ed.2d 959, reh. denied 412 U.S. 944, 93 S.Ct. 2780, 37 L.Ed.2d 405 (1973)). In *Linn*, the trial court was dealing with three defendants who were *alleged* "to have participated in the same act or transaction." Id at 1274. This is not the issue in the present case. Needless to say, a compelling reason for severance exists when the circumstances are such as to violate the rule when the prosecution does not even allege any of the three criteria of W.R.Cr.P. 11(a) in combining multiple charges in one information. Failure to comply with W.R.Cr.P. 11(a) is a compelling reason for not permitting the joinder of different offenses into a single information. In *Pote*, 695 P.2d at 623, we also said, "[g]ranting or denying a motion for severance is discretionary with the trial court" (citing *Jasch v. State*, 563 P.2d 1327, 1335 (Wyo.1977)). As Linn, Jasch deals with the joining of co-defendants who were charged with involvement in the same drug sale. W.R.Cr.P. 12 and 13 are permissive and discretionary once the threshold of compliance with W.R.Cr.P. 11 is achieved. Without compliance with W.R.Cr.P. 11, joinder under W.R.Cr.P. 12 and 13 would be improper. The appropriateness of joinder of F.R.Cr.P. 8 (W.R.Cr.P. 11) "is a question of law." *United States v. Werner*, 620 F.2d 922, 926 (2d Cir.1980).[6]

If we assume the prosecutor meant to consolidate the informations pursuant to W.R.Cr.P. 12 instead of W.R.Cr.P. 11(a) in his Motion for Joinder, based upon his allegations that the crimes are the same or of similar character and are connected togeth-

---

**6.** No issue is raised in brief by the State that Howard made inadequate objection as to either improper joinder under W.R.Cr.P. 11 in Information No. 9691 or joinder of the two informations by application of W.R.Cr.P. 12, and based on this mutual attribution of the record, we will accept the litigative submission to this court that Howard did not waive either (1) misjoinder under W.R.Cr.P. 11(a); or (2) consolidation of informations under W.R.Cr.P. 12 by failure to object. The contention of objection is found in the motion for new trial. No transcript of the pretrial conference is available. Consequently we will not need to resolve the appeal challenge on a plain-error purview.

er by a common scheme or plan, we are still forced to examine the record to arrive at our understanding of whether or not all the counts in Information No. 9691 should have been joined or if misjoinder has occurred.

Obviously, the false battery voucher is not part of the same activity or transaction as the failure-to-account/embezzlement charges. By elimination, we are then left with an inquiry into whether or not the offenses could have been joined in one information by a common scheme or plan. "[A] common scheme or plan embrac[es] the commission of two or more crimes so related to each other that proof of one tends to establish the other." *United States v. Weaver*, 565 F.2d 129, 134 (8th Cir.1977), cert. denied 434 U.S. 1074, 98 S.Ct. 1263, 55 L.Ed.2d 780 (1978); *State v. Jones*, 120 Ariz. 556, 587 P.2d 742 (1978). The caution against joining unrelated counts in one indictment or information is that same caution in guarding against admission into evidence of other crimes or bad acts under W.R.E. 404(b). See also *United States v. Quinn*, 365 F.2d 256, 265 (7th Cir.1966). While the court in that case went so far as to disregard the government's reliance on common scheme where "[e]ach count of the indictment failed to allege 'a common scheme or plan' connecting the different transactions," we need not extend our discussion to that extent. Id. at 264. While the State here did not allege a common scheme and same offense in its motion for joinder, it did represent the existence of a common scheme and same offense in its motion for joinder. Contrarily, we do not find that the logical relationship frequently stated as the test, *United States v. Brown*, 823 F.2d 591 (D.C. Cir.1987), in comparing embezzlement or fiduciary failure to account with improvident inclusion of the battery cost as an expense account reimbursement item.

Nowhere in this record is any evidence to be identified sustaining the criteria necessary for compliance with W.R.Cr.P. 11(a) to join the battery charge within other multiple offenses for inclusion in one information. Consequently, misjoinder occurred as an error of law, *United States v. Kabbaby*, 672 F.2d 857 (11th Cir.1982); and accordingly, I would vacate the battery charge, Count V of Information No. 9691. C. Wright, Federal Practice and Procedure: Criminal 2d § 143 at 487 (1982). The evidence of a criminal offense as to the battery charge was tenuous at best, and on a single-count trial, the question of submission to the jury may have properly been raised. The prejudicial nature of inclusion with four counts of complex, well-proved failure-to-account/embezzlement is obvious. Illustrative of the cumulative effect of jointly tried but completely separate offenses, see discussion in *State v. Boscarino*, 204 Conn. 714, 529 A.2d 1260 (1987).

We are then faced with consideration of whether the two counts of Information No. 9692 for which guilty verdicts were rendered should likewise fall under W.R.Cr.P. 12 and 13. Initially, it is observed that the sufficiency of the evidence for Counts II and III of that information, later discussed in a sufficiency-of-the-evidence context, is not comparable to the weakness of Count V, Information No. 9691.

In holding that Count V of Information No. 9691 originally should not have been combined with the other four as dissimilar and disconnected in essential elements, we do not similarly find prejudicial error in the trial of both informations at the same time under this circumstance, and particularly so since little benefit in reversal for retrial could be perceived where the only additional penalty presently imposed was restitution of the amount of the vouchers.[7]

7. If considering that the joinder of the informations was improvident, it was harmless in consideration of the result. *Pote*, 695 P.2d 617; *Dobbins v. State*, 483 P.2d 255 (Wyo.1971). Joinder within an information as subject to W.R.Cr.P. 11 may not be subject to the same more relaxed discretionary rule that applies to joinder under W.R.Cr.P. 12. One bespeaks to identity of subject matter; the other invokes convenience and efficiency. *Dycus v. State*, 529 P.2d 979 (Wyo.1974). See *United States v. Foutz*, 540 F.2d 733 (4th Cir.1976); F.R.Cr.P. 8(a); C. Wright, Federal Practice and Procedure: Criminal 2d § 143 at 479 (1982); and Note, *Joint and Single Trials Under Rules 8 and 14 of the Federal Rules of Criminal Procedure*,

## VI. JOINDER OF THE FAILURE TO ACCOUNT–EMBEZZLEMENT CHARGES

Whether Counts I, II, III and IV of Information No. 9691 should have been joined in one count has been dealt with by our analysis of Issue II as following our conclusion that the affirmed Counts I and III involve definably separate funds, different statutes, and consequently separate offenses within a general modus operandi of money receipt and expenditure in the County Treasurer's office. Joinder was consequently appropriate in the absence of prejudice. *Brown*, 823 F.2d 591; *Pote*, 695 P.2d 617; *Goodman*, 601 P.2d 178.

## VII. SUFFICIENCY OF THE EVIDENCE

Finally to be considered is the sufficiency of the evidence.

### (a) Evidence of *Notice* to Account and Pay–Over

■ The record evidences Howard's receipt, retention, and non-deposit of contested funds. Howard argues that under Wyoming statute no crime is committed until demand is made, which would mean that until she is caught, no offense can be charged. Since we otherwise reverse Count IV, this claimed defense relates only to Count I. We do not define Wyoming criminal statutes as intending this result for public officials, and find the required authority in statutes designating the duty of the position and obligatory terms of the Uniform Municipal Fiscal Procedures Act.

Specifically, the reasoned authority of *Griswold v. State*, 23 Okl.Cr. 136, 212 P. 1018, 1020 (1922) is adopted:

In cases like this it is unnecessary to allege that a demand for payment has been made and refused.

"Such requirement, it has been urged, would be a direct encouragement of laxity of duty, for an agent, and especially a public officer, could retain money that came into his possession for an indefinite time; then if an investigation would disclose that such money had been retained, all that the accused would have to do would be to pay it over on demand." 9 R.C.L. 76.

■ To make clear the posture now adopted, it is concluded that any public office having regular responsibility for receipt of public funds within the purview of the criminal statute is legally required to account as a designated responsibility of the position held, and further demand is not required. In this regard, as it may otherwise be construed, this decision supersedes *State v. Campbell*, 42 Wyo. 252, 293 P. 365 (1930), and follows the result of *Harris v. State*, 487 P.2d 800 (Wyo.1971). In application of the principle that the authority criterion can be found in the nature of the position held by the County Treasurer, we would then analyze applicable statutory provisions for that elective position, including specifically defined responsibilities in W.S. 18–3–804, 18–3–805 and 18–3–806.[8]

---

74 Yale L.Rev. 554 (1965). If it was error in strict application of joinder principles, the strength of the conviction evidence and the selectivity of the jury verdicts renders joinder harmless.

8. W.S. 18–3–804 provides:

Each county treasurer shall keep a true account of the receipts and expenditures of all monies which come into his office and shall perform all duties required by law.

W.S. 18–3–805 provides:

Each county treasurer shall receive all monies belonging to the county and state, and all monies required by law to be paid to him. All monies received for the use of the county shall be paid out only on the orders or warrants issued by the board of county commis-

sioners as prescribed by law except where provisions for the payment are otherwise made by law.

W.S. 18–3–806 provides:

Each county treasurer shall keep a true account of the receipts and expenditure of all monies which come into his office in a book or books kept by him for that purpose. The books shall be available at all times for inspection by the board of county commissioners or any member thereof, county and state officers or any citizen. At the annual meeting of the board of county commissioners on the first Monday in January of each year or at such other time as they may direct, the county treasurer shall settle with them his account for the preceding year, and shall exhibit to them all his books, accounts and vouchers to

Additionally, the Uniform Municipal Fiscal Procedures Act, W.S. 16–4–101 through 16–4–124, as applied to counties by definition in W.S. 16–4–102(a)(xiv)(B), includes further controls and obligations in W.S. 16–4–120(c), 16–4–121(a), and 16–4–122(a).[9]

Where a statutory responsibility exists, authority is also defined by criteria and obligation implicit and explicit within the nature of the job. Actually, without counsel from the statute, it is apparent that the County Treasurer has a confined and defined fiscal obligation of receipt, maintenance, disposition, and accounting as the financial agent for the County.

Appropriately, in an early New Jersey case, it was stated:

A demand is only one class of evidence for proving fraudulent conversion. Other classes are: (1) Where, by statute, a public officer is required to pay over funds at a definite time, and fails to do so, and there is proof that he has not done so, and that he has applied the same to his own use, that is evidence from which a jury may find a fraudulent conversion, even without a demand; or (2) where, by the rules and regulations or agreement under which the defendant is employed, and to which he is required to conform, a time is definitely fixed for him to account for moneys received, and it appears that he has lawfully received moneys of his employer, but has not paid over the same in accordance with such rules, regulations, or agreement, but has converted the same to his own use, this is also evidence from which the jury may find that there was a fraudulent conver-

sion of such funds without formal demand * * *.

*Reynolds v. State*, 65 N.J.L. 424, 47 A. 644, 646 (1900). See *Geyman v. State*, 86 Okl.Cr. 348, 192 P.2d 707 (1948) and also *Tripp v. State*, 94 Okl.Cr. 231, 237 P.2d 171 (1951), where an offender pay back was to no avail as a defense after the defalcation was discovered and a two-year period of delay had existed.

(b) Sufficiency of the Evidence on Embezzlement Charges in Information No. 9692

Without detailing the testimony, there is clearly sufficient evidence under our appellate rules for the jury to have found beyond a reasonable doubt that the Denver trips were improperly charged within the scope of her performance of public business.[10] Attendance at antique auctions in Colorado did not accord with purported legislative lobbying to be pursued in Cheyenne. This court does not sit as a jury to determine guilt or innocence, *Wells v. State*, 613 P.2d 201 (Wyo.1980), but only determines whether there was sufficient evidence received by the jury to sustain the conviction, now considered in the light most favorable to the State, including reasonable inferences. *DeSersa v. State*, 729 P.2d 662 (Wyo.1986); *Murray v. State*, 671 P.2d 320 (Wyo.1983). Within our defined criteria of *Scadden v. State*, 732 P.2d 1036 (Wyo. 1987), and *Capshaw v. State*, 737 P.2d 740 (Wyo.1987), we find there is evidence of the offense sufficient for the jury to render these convictions. The trips to Denver did not support a conclusion of official purpose for a treasurer of the County.

---

be audited and allowed. He shall also report at each regular meeting of the board of county commissioners of the amount of monies received and expended by him during the intervening time, if so required.

**9.** W.S. 16–4–120(c) provides:
Each county and special district hospital shall continue to maintain the uniform system of accounting in accordance with generally accepted accounting principles and federal hospital regulations.
W.S. 16–4–121(a) provides:
The governing body of each municipality shall cause to be made an annual audit of the financial affairs and transactions of all funds

and activities of the municipality for each fiscal year. At the option of the governing body, audits may be made at more frequent intervals.
W.S. 16–4–122(a) provides:
Audit reports shall conform to generally accepted accounting principles.

**10.** It was curious that the jury acquitted Howard in Count V of Information No. 9692, involving an Anaheim, California trip apparently to Disneyland, in which the claim involved a voucher for the cost of staying at a nonexistent facility, as introduced into evidence by stipulation of the parties at trial.

## VIII. CONCLUSION

The convictions of Count I, Count III, and by virtue of the special concurrence, Count V of Criminal Information No. 9691, are affirmed; the conviction of Count IV Criminal Information No. 9691, is reversed; and the convictions of Counts II and III, Criminal Information No. 9692, are affirmed.

CARDINE, Chief Justice, specially concurring, with whom THOMAS, Justice and BROWN, Justice, Retired, join.

 I concur except as to the reversal of the conviction on count five, which is the false voucher for car battery count. Appellant did not object to the joinder. If the record "negatively reflects lack of approval by defendant," that is not a sufficient objection to preserve the claimed error for appeal.

I would affirm the conviction of count five.

THOMAS, Justice, dissenting.

I disagree with the conclusion of the majority that in some way Count IV in Criminal Action 9691 merged into Count III. The disposition in the majority opinion is fallacious. I must dissent. Whether that result occurred because of the application of tested principles of double jeopardy, or whether, in some manner, § 6–5–111, W.S.1977, was impliedly repealed by amendments to § 6–3–402, W.S.1977, is somewhat of a mystery. In any event, obfuscation abounds.

I will initially address apparent confusion relating to the statutes. At pages 6 and 7 of the majority opinion, the following appears:

"While not completely dispositive of this issue, we note the embezzlement by failure to account in Count I, W.S. 6–7–306, is the same as Count IV, W.S. 6–5–111 (1983 Replacement) (Ch. 75, § 3, S.L. of Wyoming 1982), which replaced W.S. 6–7–306 as of July 1, 1983. The question presented by this issue is generally whether Count III, W.S. 6–3–402(b) and (c)(i) (1983 Replacement), and Count IV,

W.S. 6–5–111 (1983 Replacement), were intended by our legislature to guard against the same offense. This accommodates the identical funds except for the $923.[2]

"W.S. 6–7–306, an embezzlement statute, was replaced by and has elements nearly identical to W.S. 6–5–111 (1983 Replacement). It is the legislative history of W.S. 6–5–111 in replacing W.S. 6–7–306, and the matching of its elements, that convinces us W.S. 6–5–111 is an embezzlement statute designed to curb the evil of embezzlement by public servants. In generic terms, embezzlement embraces failure to account plus conversion."

Footnote 2, ante at 32, states:

"It is curious that differing from Count II, public property embezzlement, Count III was filed under the general embezzlement statute, now W.S. 6–5–109 (1983 Replacement). The punishment for both has a maximum term of ten years as compared with failure to account of five years. W.S. 6–5–111 (1983 Replacement)."

There is an apparent misapprehension in the footnote because Count III refers to § 6–3–402(b) and (c)(i), W.S.1977 (1983 Replacement), which is the general embezzlement statute, not § 6–5–109, W.S.1977. I don't find it curious at all that Count III was filed under the general embezzlement statute because the public embezzlement statute that once was § 6–5–109, W.S.1977 (1983 Replacement), (erroneously cited in the footnote) was repealed by the legislature effective June 5, 1984. The allegations in Count III relate to a period subsequent to the repeal of § 6–5–109 and, consequently, that charge could be brought only under the general embezzlement statute. This is simply one example of confusion relative to the statutory history that is manifested in the majority opinion. Such carelessness in a Supreme Court opinion is inexcusable.

Historically, the Criminal Code in Wyoming separated embezzlement of public funds from other kinds of embezzlement. Compare § 6–136, W.S.1957, with §§ 6–138 through 6–146, W.S.1957. All were sepa-

rate from the offense of the fraudulent failure of a public officer to account even though the provision defining that offense stated that the offender "shall be deemed guilty of embezzlement * * *." § 6–137, W.S.1957. This statutory scheme was repeated in the compilation of the Criminal Code in 1977. Compare § 6–7–305, W.S. 1977 (December 1977 Repl.), with §§ 6–7–307 through 6–7–315, W.S.1977 (December 1977 Repl.). The fraudulent failure to account offense still was retained in a separate statute. Section 6–7–306, W.S.1977 (December 1977 Repl.). In both versions, these offenses were included in Ch. 7, "Offenses against property" of Art. 3, subtitled "Larceny, embezzlement, etc.," in the Criminal Code. The statutory provisions remained in that form until the 1982 legislature adopted the Wyoming Criminal Code of 1982. Chapter 75, S.L. of Wyoming 1982. In that codification of the Wyoming statutes defining crime, Ch. 3, "Offenses against property," is found in Art. 4, "Larceny and related offenses." Embezzlement is defined in § 6–3–405, and it basically captures the separate identities that were the subject of different statutes in the earlier versions. Interestingly enough, the offense of embezzlement of public property is retained as § 6–5–109, but is included in Ch. 5 entitled "Offenses against public administration" of Art. 1, entitled "Offenses by public officials." The offense of failure to account is identified as § 6–5–111, and the reference to being guilty of embezzlement no longer is set forth. This does seem to manifest a rather definite legislative intent to maintain separate offenses for embezzlement of public property and failure to account for public property.

A further revision of the criminal statutes occurred in 1983. Chapter 171, S.L. of Wyoming 1983. In that revision, the legislature consolidated those offenses that previously had been described as larceny, larceny by a bailee, and embezzlement with related offenses into a single offense defined as larceny. Section 6–3–402(d), W.S. 1977 (1983 Repl.). Section 6–3–402(b), W.S. 1977 (1983 Repl.), however, specifically excluded public servants subject to § 6–5–109, W.S.1977 (1982 Repl.). Instead, the 1983 revision continued the 1982 description of the offenses of embezzlement of public property and failure to account although the punishment for embezzlement of public property was changed to provide that the offense was a felony if the value of the property were more than $2,000; a high misdemeanor if the value of the property were less than $2,000 but more than $200; and a misdemeanor if the value of the property were less than $200.

Then, in 1984, § 6–5–109 was repealed, and the public servant was included among those who could commit larceny in violation of § 6–3–402(b). According to that statute, felony status is present if the value of the property is $500 or more. It is a misdemeanor if the value of the property is less than $500. The legislature did not repeal § 6–5–111, W.S.1977. This militates against the unsupported conclusion of the majority that "W.S. 6–5–111, in replacing W.S. 6–7–306, and the matching of its elements, * * * convinces us W.S. 6–5–111 is an embezzlement statute designed to curb the evil of embezzlement by public servants." The crux of the matter is found in the illogical conclusion that "in generic terms, embezzlement embraces failure to account plus conversion." It may be that embezzlement embraces failure to account, but there is no element of conversion required for § 6–5–111, W.S.1977, to be violated. That distinction makes all the difference.

The suggestion in the majority opinion that, in some fashion, the failure to account statute was the subject of implied repeal by the embezzlement statutes is singularly unpersuasive. Consequently, I must assume that the majority's discussion was for effect only and that the ground of its decision is the double jeopardy prohibition found in the parallel provisions of the federal and state constitutions. In that aspect, the majority opinion affords a clear illustration of that aspect of human tragedy manifested by recurring mistakes because of the inability to recall what has gone before. I searched, in vain, in the majority opinion for a reference to *Schultz v. State,* 751 P.2d 367 (Wyo.1988). Perhaps

*Schultz v. State,* supra, is ignored because its ratio decidendi is antithetical to the decision of the majority in this case. What does become apparent is a rather amazing parallel between the dissenting opinion in *Birr v. State,* 744 P.2d 1117 (Wyo.1987), and the majority opinion in this case. The transaction test espoused in Justice Urbigkit's dissents (n. 4 of the majority opinion) is resurrected.

I am compelled to object to the unfairness to the State and to the Bar of the divergence from the majority concepts of double jeopardy found in *Birr v. State,* supra, and *Schultz v. State,* supra, and those set forth in this case. The majority must have forgotten those earlier cases. What emerges then is a majority opinion that aptly fits Chief Justice Rehnquist's description of the law of double jeopardy as confused, inconsistent, and less than a model of clarity. *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) (Rehnquist, J., dissenting). See *Vigil v. State,* 563 P.2d 1344 (Wyo.1977). Fairness requires that the majority, instead of undercutting clear precedent in this jurisdiction by the tangential approach adopted here, squarely confront its obligation to either follow precedent or overrule it. Those members of the majority who have changed position owe an obligation to recant rather than renege.

We said in *Birr v. State,* supra, 744 P.2d at 1120:

"The Blockberger test can be applied by looking at the provisions of the statutes themselves and determining whether each statute calls for proof of a fact which the other does not. It also can be applied by looking at the facts of the particular case and determining if there is a different fact available to prove each of the separate offenses."

By comparing the failure to account statute with the embezzlement statute, it is clear that the two statutes are different in that embezzlement calls for proof of conversion while the failure to account statute does not. The failure to account statute requires a demand that must be proved.

There is no such element in the embezzlement statute.

The majority has obscured, except for a Freudian slip, this initial analysis that appropriately should be made in applying double jeopardy concepts. The first step is to determine whether the elements that describe the offense in the two statutes are identical or different. There is little question in this instance that the elements of the offense defined in § 6–3–402(b), W.S. 1977 (1984 Repl.), are different from the elements set forth in § 6–5–111, W.S.1977. The majority concedes this when it says, "In generic terms, embezzlement embraces failure to account *plus conversion.*" (Emphasis added.)

Furthermore, the majority opinion simply glosses over the stark fact that the State alleged, and proved, that the defendant embezzled $3,420.79 (Count III) although it also alleged and proved that she failed to account for $4,343.79 (Count IV). The majority states that the conclusion that these two statutes were intended to guard against the same offense "accommodates the identical funds except for the $923." No effort is made to explain the $923 which certainly is proof of a different fact in Count IV than was established in connection with Count III. This latter concept is embraced by *Birr v. State,* supra, by quoting from *Blockberger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), in the context of whether proof of one offense requires proof of an additional fact which the other does not.

In *Schultz v. State,* supra, we held that we need to consider "the plain language of the statute giving the words their plain and ordinary meaning." *Schultz v. State,* supra, at 370. If that is done in this instance, we discover a clear articulation of different elements of the offense. We also find allegations in the two counts that require different proof. Small wonder that the majority eschews any reference to *Schultz v. State,* supra.

The analysis articulated in *Blockberger v. United States,* supra, is pursued only when the legislature has described substantially identical conduct in two separate stat-

utes. If that stipulation exists, the process of *Blockberger v. United States*, supra, is invoked as a tool in reaching a conclusion with respect to legislative intent. If the conclusion is that the legislature intended to suppress different evils, then multiple punishment is not foreclosed. See *Birr v. State*, supra, and authorities cited there. In this case, the gravamen of the embezzlement offense is the actual conversion of the property. On the other hand, the gravamen of the offense of failure to account is precisely that. No conversion is required for that evil to be addressed. As a part of the analysis in *Schultz v. State*, supra, this court held that the identification of separate punishments for each offense was significant in determining whether the legislature intended the offenses of conspiracy and the actual commission of the planned crime to be separate offenses. We find in this instance that our legislature not only has provided for separate punishments in the embezzlement statute and the failure to account statute, but that the punishments are different.

In *Birr v. State*, supra, we also said: "We also note that felony murder and aggravated robbery are contained in two separate statutes, each with its own punishment provision.

" 'The presumption when [the legislature] creates two distinct offenses is that it intends to permit cumulative sentences, and legislative silence on this specific issue does not establish an ambiguity or rebut this presumption.' *Garrett v. United States*, 471 U.S. at 793, 105 S.Ct. at 2419." *Birr v. State*, supra, 744 P.2d at 1121–1122.

The manifestation of the intention to create two distinct offenses is clear in this instance. The presumption of cumulative sentences should be followed.

It is to be noted that the majority quotes from *State v. Carter*, 714 P.2d 1217 (Wyo. 1986), but it does not follow the ratio decidendi of that decision. That case is consistent with prior decisions by this court, and those of the Supreme Court of the United States, which hold that the double jeopardy clause is not implicated if separate evidence

sustains two violations of the same statute. *Baum v. State*, 745 P.2d 877 (Wyo.1987), and the cases there cited; *Birr v. State*, supra; *Hamill v. State*, 602 P.2d 1212 (Wyo.1979); *Goodman v. State*, 601 P.2d 178 (Wyo.1979); *Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958); *Blockberger v. United States*, supra. The material quoted by the majority not only is taken out of context but is inappropriate to the facts of this case. This is not an instance in which the evidence of the conversion of public property (embezzlement) is the only evidence to support a failure to account charge. It is part of the evidence, but that is the most that can be said.

In essence, this case holds that we have adopted a rule of merger when evidence overlaps. The majority says:

"The Brannan desk money and the Swanson check were the basis for Count III of Information No. 9691. The Count IV failure to account charge *included that money* as well as the postage sum of nine hundred twenty-three dollars ($923) from 1984." Ante at 33.

It is apparent that the jury was able to perceive what the majority chooses to ignore. The evidence was sufficient to demonstrate that Howard failed to account for money entrusted to her, but the State could not prove that she had converted all of that money to her own use. The majority refuses to accept the fact that, with respect to some of the same monies, two crimes were committed. The majority approach cannot be supported by our prior decisions, but the claim is not a novel one.

"A different-evidence test involves that different evidence will be used in each conviction not required in the other, not that the augmented offense involves further misconduct which was part of the composite transaction." *Birr v. State*, supra, 744 P.2d at 1124 (Urbigkit, J., dissenting).

This precise analysis was rejected by the court in *Birr v. State*, supra; *Baum v. State*, supra; *Hamill v. State*, supra; and *Goodman v. State*, supra.

I also am clear that no error was committed with respect to Count V of the charge in Criminal Case No. 9691. The objection to prejudicial joinder must be made before trial. There is no justification for not presenting it until a motion for new trial or on appeal. Professor Wright correctly states the rule.

> "The objection is waived if not raised by motion before trial, though in unusual circumstances the court may entertain the motion though it is not made until some later time. In any event it is too late to raise the objection for the first time after trial." C. Wright, Federal Practice and Procedure: Criminal 2d § 145 at 528 (1982), and cases cited at nn. 18–20 and 1987 Pocket Supp. (Footnotes omitted.)

This court has not been willing to accept the proposition that failure to preserve a record justifies avoiding the burden of plain error. On the contrary, we require that the appellant demonstrate by reference to the record, without resort to speculation or equivocal inference, what occurred at trial. The appellant must demonstrate the facts upon which the claim of error rests, and that the fact or facts demonstrate the existence of a clear and obvious, not merely arguable, violation of law. *Lozano v. State*, 751 P.2d 1326 (Wyo.1988); *Cutbirth v. State*, 751 P.2d 1257 (Wyo. 1988); *McDonald v. State*, 715 P.2d 209 (Wyo.1986); *Tompkins v. State*, 705 P.2d 836 (Wyo.1985), cert. denied 475 U.S. 1052, 106 S.Ct. 1277, 89 L.Ed.2d 585 (1985). In this instance, it is clear that, in the absence of objection by the appellant, no error occurred with respect to the joinder of Count V. I am in accord with Chief Justice Cardine and Justice Brown, Retired, as to this issue.

I would affirm the convictions on all counts.